**WEST TEXAS REHABILITATION CENTER and John Davidson, Appellants,**

v.

**P.J. ALLEN, Carolyn Allen, Raymond Goddard and Betty Goddard, Appellees.**

**No. 3–90–196–CV.**

Court of Appeals of Texas, Austin.

June 12, 1991.

David Stubbeman, Wagstaff, Alvis, Stubbeman, Seamster & Longacre, Abilene, for appellants.

Jill Beckett Cochran, McGinnis, Lochridge & Kilgore, Austin, for appellees.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

KIDD, Justice.

This is a will construction case. Appellees brought a suit for a declaratory judgment construing the will of Golda Mae Allen. The appellees, beneficiaries under the residuary clause of the will, sought a declaration that the independent executor of Allen's estate made an improper and excessive distribution of the estate to West Texas Rehabilitation Center ("WTRC"). The probate court granted appellees' motion for summary judgment and declared that, under the terms of the will, the independent executor improperly distributed $120,871.20 to WTRC. WTRC appeals the summary-judgment ruling. We will affirm the judgment of the probate court.

### THE CONTROVERSY

Golda Mae Allen died on October 23, 1987. She was a widow and had no children. She was, however, survived by relatives, some of whom are the appellees in this case. The decedent's will was admitted to probate on November 9, 1987. John Davidson was appointed independent executor in accordance with the terms of the will.

Paragraph two of the will provides for specific cash bequests totalling $30,000 that were to be derived from "money to be paid from funds on deposit to my credit at my death in any and all financial institu-

tions or brokerages [sic] houses...." One of these bequests is a gift of $10,000 to WTRC.

Paragraph three of the will, which is the primary source of controversy between the parties, states:

If, after payment of my debts, funeral expenses, and taxes, not enough funds remain for the preceding specific money bequests to be paid in full, I direct my Independent Executor to prorate the amounts. I direct my Executor to determine the percentage each gift is of the total dollars bequeathed in this will, multiply such percentage by the total dollars available for distribution, and pay each legatee the resulting reduced sum. If more money is available for distribution than is bequeathed by me in this Will, I give, devise and bequeath such funds to WEST TEXAS REHABILITATION CENTER....

Paragraph four of the will, a standard residuary clause, bequeaths the residue of the estate to the appellees.

The inventory, appraisal, and list of claims prepared by the independent executor show, on the date of the decedent's death, the estate consisted of a checking account with a balance of $10,644.69, a real estate lien note, a Merrill Lynch cash management account, and miscellaneous property.

The Merrill Lynch account statement for the period including the decedent's date of death reflects the following balances:

| | |
|---|---|
| Cash | $348.07 |
| Cash Management Account Funds | $46,591.00 |
| Other Money Funds | |
| Priced Investments | $133,957.00 |

The category of "Other Money Funds— Priced Investments" consisted of stocks, bonds, and mutual funds.[1] The independent executor determined that the entire Merrill Lynch account passed under paragraphs two and three of the will. He therefore sold the stocks, bonds, and mutu-

al funds in the priced investments account and distributed the proceeds from the sale to WTRC.

The appellees filed suit against the independent executor and WTRC,[2] alleging that only the portion of the Merrill Lynch account styled "Cash" and "Cash Management Account Funds" passed under paragraphs two and three of the will. The appellees argued that paragraphs two and three were intended only to dispose of the "money" or "funds" the decedent owned upon her death and asserted that, pursuant to the residuary clause, they were entitled to the proceeds of the sale of the stocks, bonds, and mutual funds that were in the "Other Priced Investments" portion of the account.

The appellees moved for summary judgment, arguing that, as a matter of law, the executor misconstrued the will and made an improper and excessive distribution to WTRC. The probate court agreed, and held that paragraphs two and three of the will disposed of only the estate's "cash on hand or cash held in financial institutions or brokerage houses." Thus, all of the estate's stocks, bonds, and mutual funds did not pass under the provisions of paragraphs two and three of the will, but instead passed to the beneficiaries named in the residuary clause. The court ordered WTRC to return $120,871.20 to the executor, and the executor was ordered to distribute this amount to the appellees. The court also ordered WTRC to pay the appellees' attorney's fees.

On appeal, WTRC makes two general arguments. WTRC argues in six points of error that the probate court erred in granting summary judgment for appellees because the entire Merrill Lynch Account, including stocks, bonds, and mutual funds, passed pursuant to paragraphs two and three of the will. WTRC argues in point of

1. The Merrill Lynch account statement shows that the decedent owned the following equities upon her death: 1000 shares of Gulf States Utilities stock, 2627 shares of Duff & Phelps Selected Utilities Fund, and 2746 shares of the Liberty All Star Equity Fund. The statement shows that under the heading "mutual funds"

the decedent owned 50,585 shares of Merrill Lynch Unit Investment Trusts and 5077 shares of the Merrill Lynch Retirement Income Fund.

2. We will hereinafter refer to the appellants collectively as WTRC unless otherwise noted.

error seven that the court erred in ordering WTRC to pay the appellees' attorney's fees.

## DISCUSSION AND HOLDING

■ To sustain a summary judgment the movant must establish, as a matter of law, that no genuine issue of material fact exists. *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 734 (Tex.1985). We are limited in our consideration of issues and facts. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986). We will review the summary-judgment record to determine whether a disputed material fact issue exists that would preclude summary judgment. *Bayouth v. Lion Oil Co.,* 671 S.W.2d 867, 868 (Tex.1984). We must accept as true the nonmovant's version of the evidence. *Sabine Pilot,* 687 S.W.2d at 734. Every reasonable inference must be indulged in favor of the nonmovants and any doubts must be resolved in their favor. *Bayouth,* 671 S.W.2d at 868.

■ The testator's intent governs the interpretation of the will. *McGill v. Johnson,* 799 S.W.2d 673, 675 (Tex.1990); *Stewart v. Selder,* 473 S.W.2d 3, 7 (Tex.1971). The sense in which the testator used the words in the will is the primary consideration in interpreting the meaning of those words. *Stewart,* 473 S.W.2d at 7. We must determine the meaning of the testator's words, by the four corners of the will, if possible. *Frost Nat. Bank of San Antonio v. Newton,* 554 S.W.2d 149, 154 (Tex. 1977). Thus, we must find the intention of the testator in the words of the will, and for that reason her other declarations are admissible only to resolve specific problems of interpretation such as equivocation or latent ambiguity. *See Stewart,* 473 S.W.2d at 7.

■ In determining the testator's intent, we will consider the entire instrument and, if possible, harmonize every provision with all other provisions, and give them their proper effect. *Republic National Bank of Dallas v. Fredericks,* 155 Tex. 79, 283 S.W.2d 39, 43 (Tex.1955); *Hancock v. Krause,* 757 S.W.2d 117, 119–20 (Tex.App. 1988, no writ). WTRC argues that the decedent's will, by its "four corners," clearly indicates her intent to bequeath all of the assets in the Merrill Lynch account to WTRC. In the alternative, WTRC contends that the will is ambiguous and that a question of fact exists precluding a summary judgment. In support of these arguments, WTRC asserts that the term "money," as used in paragraphs two and three of the will, includes the stocks, bonds, and mutual funds in the Merrill Lynch account. We disagree.

Courts have generally construed the testamentary terms "money" and "cash" to mean only coins, paper money and demand deposits. *See Stewart,* 473 S.W.2d at 7; *Thompson v. Thompson,* 149 Tex. 632, 236 S.W.2d 779, 790 (Tex.1951); *Foy v. Clemmons,* 365 S.W.2d 384, 386 (Tex.Civ.App. 1963, writ ref'd n.r.e.); *Zahn v. National Bank of Commerce of Dallas,* 328 S.W.2d 783, 792 (Tex.Civ.App.1959, writ ref'd n.r. e.). In *Stewart,* the decedent's will left specific gifts of property to certain individuals, and "any cash, after expenses and debts are paid" to a relative of the decedent. An inventory of the decedent's estate revealed that, upon his death, the decedent owned uncashed checks, several bank accounts, and stocks and bonds. The supreme court noted that it is presumed that a decedent intends any property owned to pass by the terms of the will and not by intestacy. 473 S.W.2d at 9. Nevertheless, the court held that the term "cash" was to be attributed its usual and ordinary meaning, which is coins, paper money, and checks and demand deposits in banks and savings institutions. The court also noted that the term "money" normally means cash or coin. The only time these definitions might be altered is if the record establishes essential facts to demonstrate that the decedent intended to attribute an alternative meaning to the words. Thus, because the term "cash" did not include stocks and bonds, the securities passed according to the intestacy statutes. *Id.* at 9.

The appellees argue that the following clause from paragraph three, standing alone, unambiguously demonstrates that

the decedent intended only *money* to pass under paragraphs two and three of the will:

If, after payment of my debts, funeral expenses, and taxes, not enough *funds* remain for the preceding *money* bequests to be paid in full, I direct my Independent Executor to prorate the amounts. I direct my Executor to determine the percentage each gift is of the total *dollars* bequeathed in this Will, multiply such percentage by the total *dollars* available for distribution, and pay each legatee the resulting reduced sum. If more *money* is available for distribution than is bequeathed by me in this Will, I give, devise and bequeath *such funds* to West Texas Rehabilitation Center....

(Emphasis added.) We agree. It is clear that the decedent was using the terms "money" and "funds" interchangeably. She unambiguously provided for the money she owned to pass under paragraphs two and three of the will; she intended the remainder of the property she owned, including the stocks, bonds, and mutual funds in the "Other Priced Investments" portion of the Merrill Lynch account, to pass to the beneficiaries named in the residuary clause. There was, therefore, no genuine issue of material fact to be decided by the trier of fact. The probate court correctly held that the executor should have distributed the stocks, bonds, and mutual funds contained within the Merrill Lynch account to the appellees. We overrule points of error one through six.

■ WTRC argues in its seventh point of error that the probate court erred in awarding attorney's fees to the appellees. The court ordered WTRC to pay attorney's fees pursuant to the declaratory judgment statute, which provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ.Prac. & Rem.Code Ann. § 37.009 (1986). We may not reverse the probate-court award except upon a clear showing of an abuse of discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985); *Jennings v. Minco Technology Labs, Inc.* 765 S.W.2d 497, 503 (Tex.App.1989, writ

denied). Based upon this record, we hold that the trial court did not abuse its discretion in awarding the appellees attorney's fees on an equitable and just basis. We overrule the seventh point of error. Appellees' cross-point of error complaining that the amount of attorneys' fees was insufficient is also overruled.

The probate-court judgment is affirmed.