Michael Lee LOCKHART, Appellant,

v.

STATE of Texas, Appellee.

No. 70734.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 2, 1992.

Rehearing Denied Feb. 24, 1993.

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Dist. Atty., and John R. DeWitt, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MALONEY, Judge.

A jury convicted appellant of capital murder, specifically *murder of a peace officer*.[*] V.T.C.A. Penal Code, § 19.03(a)(1). The jury affirmatively answered the submitted issues prescribed by article 37.071(b) and the trial court assessed punishment at death. Art. 37.071(e), V.A.C.C.P. This cause was tried in Bexar County on a change of venue from Jefferson County. Appellant appeals, alleging twenty-two points of error.[1] We will affirm his conviction. Because appellant does not challenge the sufficiency of the evidence, we will dispense with a detailed recitation of the facts.

Briefly, on March 22, 1988, Beaumont Police Officer Paul Hulsey, Jr. saw appellant driving a red Corvette with a Florida license plate in a high crime area in Beaumont, Texas. Officer Hulsey recognized the passenger as being a local drug dealer. When appellant saw the officer, he began speeding and running stop signs. Officer Hulsey chased the car, but to no avail.[2] Later that evening, after discovering that appellant had checked into a local motel, Officer Hulsey went to appellant's motel

---

[*] Only the introductory paragraphs, points of error twelve through nineteen, and the closing paragraph are designated for publication. *See* Tex.R.App.P. 223(b).

1. Appellant has also filed a pro se supplemental brief raising four additional points of error, challenging the constitutionality of article 37.071, V.A.C.C.P. and the effectiveness of his counsel for failing to challenge that article's constitu-

tionality at trial. Because appellant does not have an absolute right to hybrid representation, we will not address these claims. *Miniel v. State,* 831 S.W.2d 310, 313 n. 1 (Tex.Cr.App. 1992) (citations omitted).

2. We note that appellant testified to a different version of the facts. According to appellant's testimony, Officer Hulsey never chased the car.

room and an altercation ensued which resulted in the officer's death. At trial, appellant admitted shooting and killing Officer Hulsey, but claimed self-defense.

In his twelfth through eighteenth points of error, appellant complains of extraneous offenses that were admitted at the guilt-innocence portion of his trial.[3] At trial, the State introduced testimonial and physical evidence regarding an attempted drug offense, an aggravated robbery of an automobile salesman (i.e. a stolen car), a burglary of a vehicle (i.e. a stolen license plate), an aggravated bank robbery, a burglary (i.e. a stolen gun), and a so-called "diary of extraneous offenses." Appellant objected that the aforementioned evidence constituted evidence of extraneous offenses; that the State had not proven relevancy or materiality to any issue in the case, and that the State had not given any reason for the admissibility of such evidence.

3. Specifically, appellant contends:
POINT OF ERROR NO. TWELVE: Reversible error occurred when the State was allowed to try Appellant as a criminal generally through the introduction of extraneous offenses.
POINT OF ERROR NO. THIRTEEN: The Trial Court erred in admitting evidence of an extraneous offense, to-wit: burglary of a habitation.
POINT OF ERROR NO. FOURTEEN: The Trial Court erred in admitting evidence of an extraneous offense, to-wit: an attempted drug offense.
POINT OF ERROR NO. FIFTEEN: The Trial Court erred in admitting evidence of an extraneous offense, to-wit: aggravated robbery of an automobile salesman.
POINT OF ERROR NO. SIXTEEN: The Trial Court erred in admitting evidence of an extraneous offense, to-wit: burglary of a vehicle.
POINT OF ERROR NO. SEVENTEEN: The Trial Court erred in admitting evidence of an extraneous offense, to-wit: aggravated robbery at a bank.
POINT OF ERROR NO. EIGHTEEN: The Trial Court erred in admitting State's Exhibit Sixty-five, a diary of extraneous offenses.

4. After searching the record, the only reference to any purpose for the introduction of *any* of the alleged extraneous offenses is in regard to the bank bag taken from the Louisiana bank robbery the day before appellant killed the officer.
[Prosecutor]: He [defense counsel] objected to the bank bag, Judge and I'm telling you that's why it's relevant.
[The Court]: Why?

The trial court admitted the evidence on the condition that relevancy ultimately be shown. Tex.R.Crim.Evid. 104(b). Before the State rested its main case, the prosecutor stated that the evidence of the stolen gun, the stolen car, the stolen license plate, and the money, showed what appellant possessed at the time he killed the officer.[4]

■ Evidence of other crimes or bad acts that a defendant may have committed cannot be introduced at the guilt-innocence phase to show that the defendant acted in conformity with his criminal nature and therefore committed the crime for which he is on trial. *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex.Cr.App.1991) (op. on reh'g); *Abdnor v. State*, 808 S.W.2d 476, 478 (Tex.Cr.App.1991); *Couret v. State*, 792 S.W.2d 106, 107 (Tex.Cr.App.1990); *Foster v. State*, 779 S.W.2d 845, 859 (Tex.Cr.App.1989), *cert. denied*, 494 U.S. 1039,

[Prosecutor]: Well, he was in possession of it, your Honor and we can put him in possession of it earlier.
Let me also say to the Court—state if the Court is concerned about this, let me state that the bank bag or the last time she sees it or—if his objection is that it will confuse the issues because of the robbery, the bank bag that she sees is—or she sees it before the robbery occurred. I think the Court will remember it occurred—I think the Court will remember it occurred on the twenty-first and I think she doesn't see the bank bag or she sees even the Defendant—the last time she sees the Defendant or the bank bag is the nineteenth or twentieth.
[The Court]: The question I have is, where is the possession of a bank bag at all relevant to whether or not—
[Prosecutor]: He's in possession of that same bank bag—
[The Court]: Wait a minute until I ask a question, please.
[Prosecutor]: That's my answer, sir.
[The Court]: I haven't completed the question. How can you give me an answer? The question is where is that relevant to the allegations you made in the indictment?
[Prosecutor]: Judge, it puts him just in possession of things that he's in possession of at the time he killed Paul Hulsey, just like he's in possession of a Corvette, just like he's in possession of a stolen plate, he's in possession of money, he's in possession of a gun. We want to show he's in possession of the same or similar bank bag earlier. It helps draw him to that bank bag and his identity to that bank bag.

110 S.Ct. 1505, 108 L.Ed.2d 639 (1990); *Templin v. State*, 711 S.W.2d 30, 32 (Tex. Cr.App.1986) (citations omitted); Tex. R.Crim.Evid. 404(b). However, extraneous offenses may be admitted for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex.R.Crim.Evid. 404(b).

■ Also, evidence of extraneous offenses that are indivisibly connected to the charged offense and necessary to the State's case in proving the charged offense may be admissible as relevant evidence to explain the context of the offense for which the defendant is on trial. *See Mayes v. State*, 816 S.W.2d 79, 86–87 n. 4 (Tex.Cr. App.1991); *see also Mann v. State*, 718 S.W.2d 741, 744 (Tex.Cr.App.1986), *cert. denied*, 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987); *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Cr.App.1972).

■ Here, Officer Hulsey saw appellant talking to a suspected drug dealer near a basketball court in a high crime area. According to the drug dealer's testimony, appellant approached the drug dealer and asked him if he knew how to get some cocaine or marijuana. The drug dealer said no, but then got into appellant's car. Officer Hulsey became suspicious when he saw the drug dealer get into the car because appellant was driving a red Corvette with a Florida license plate in a high crime area. When appellant noticed that Officer Hulsey had seen them, he began speeding and running stop signs through Beaumont, ultimately losing the officer in the chase.

The evidence at trial revealed that appellant had stolen the red Corvette from an automobile salesman at gunpoint about four months before this offense, and that appellant checked into a Beaumont motel room using the salesman's name. Appellant admitted stealing the car. The Florida license plate on the red Corvette was identified at trial as that stolen about two months before this offense from a vehicle belonging to a Florida witness. Appellant testified that he put a Florida license plate on the Corvette around that time.

This evidence describes the circumstances surrounding Officer Hulsey's death and is necessary to the jury's comprehension of the offense. Officer Hulsey would not have gone to appellant's motel room had he not been involved in a car chase with appellant who was driving a stolen car with a stolen license plate.[5] And, Officer Hulsey would not have been following the car driven by appellant had his suspicions not been aroused by what he saw concerning a suspected drug transaction.

■ We hold that the evidence of the attempted drug offense, stolen car, and stolen license plate constituted contextual evidence indivisibly connected to this offense and therefore relevant under Tex. R.Crim.Evid. 401.[6] We also conclude that the possible prejudicial effect of the aforementioned evidence did not substantially outweigh its probative value; therefore,

---

5. It is unclear whether Officer Hulsey was ever aware that the Corvette was stolen; however, the record reflects that when he went to appellant's motel room, he was aware that the license plate on the Corvette was stolen.

6. We note that the facts of this case are distinguishable from the facts in *Christopher v. State*, 833 S.W.2d 526 (Tex.Cr.App.1992). In *Christopher*, the appellant was stopped for driving a stolen vehicle. The car contained property that had been reported stolen from several residences earlier that day. In the appellant's subsequent trial for burglary of a habitation, the trial court admitted evidence that appellant was driving a stolen car at the time of his arrest. We stated that "[w]hile evidence establishing the car as stolen was relevant to the determination of probable cause to stop appellant, that issue was not contested before the jury." *Id.* at 529. We further held that the evidence was not part of the "context of the offense."

In *Christopher*, the fact that the appellant was driving a stolen car was inconsequential to any issue for determination by the jury. Moreover, evidence of the stolen car was not necessary to give the jury a complete picture of the commission of the offense. In the instant case, these events lead to the officer's appearance at appellant's motel room. The prior encounter between the officer and appellant is so intertwined with the commission of the instant offense as to render it necessary to the jury's comprehension of the instant offense. *See Mayes*, 816 S.W.2d at 86–87 n. 4.

such evidence was admissible.[7]  *Mann,* 718 S.W.2d at 744 (the prejudicial effect of evidence will rarely render it inadmissible if it proves the context of the offense).

Appellant also complains of testimony concerning an aggravated bank robbery and a burglary.  Out of the jury's presence, appellant objected that such testimony was extraneous offense evidence lacking any probative value, that it confused the issues, and that the prejudicial effect of that testimony clearly outweighed any probative value.  The trial court overruled the objection under TEX.R.CRIM.EVID. 403.  Appellant then requested the State to specify in the record for what purposes under rule 404(b) the testimony was offered.  The trial court rejected that request because the evidence was tendered as relevant evidence under rule 401.  Undaunted, appellant further requested that the trial court limit the purposes for which the jury could consider the testimony.  Appellant did note that he did not know what those purposes were since the State was not required to articulate its reasons.  The trial court stated that any limiting instruction would be given in the charge, not during the testimony.[8]

A bank teller testified that on March 21, 1988, the day before the instant offense, someone robbed her bank at gunpoint in Baton Rouge, Louisiana.  The teller handed the robber a one hundred dollar bill, which had been set aside as "bait money."  The bank had previously recorded the serial number of that bill in a log.  Shortly after the instant offense, appellant gave a taxi-cab driver a one hundred dollar bill to take him to Houston.  The teller identified

that one hundred dollar bill as the bait money she had given to the robber.  Appellant testified that he had been in Baton Rouge during the second week in March, 1988 and had stayed for a couple weeks thereafter.  Thus, the fact that appellant was in Baton Rouge when the bank robbery was committed, and the fact that he possessed the stolen money about one and one-half days after the robbery would indicate that he committed the bank robbery.

The gun found in the red Corvette after Officer Hulsey was killed was identified at trial by a police officer as his .357 magnum Smith and Wesson service revolver, which had been stolen from his home about seven months before this offense.  And, according to the testimony of an FBI special agent, a bullet found near Officer Hulsey's body was fired from that same gun.[9]

We agree with appellant that the testimony concerning the bank robbery and the burglary indicate extraneous offenses, and now turn to the issue of their admissibility.  The aggravated bank robbery and the burglary are offenses separate and independent of the killing of the police officer.  The State has not shown that the bank robbery was in any way connected to the instant offense, and although the stolen gun was the murder weapon, the fact that it was stolen was not necessary to the jury's comprehension of this offense; therefore, the bank robbery and the burglary are not "same transaction" contextual evidence.  *Mayes,* 816 S.W.2d at 86–87 n. 4.  Rather, the evidence of the bank robbery and the burglary are akin to the general "background" contextual evidence that is

7. Additionally, appellant waived any error in the State's introduction of evidence of the attempted drug offense because appellant testified that he was looking for marijuana.  *See Hughes v. State,* 563 S.W.2d 581, 590 (Tex.Cr.App.1978), *cert. denied,* 440 U.S. 950, 99 S.Ct. 1432, 59 L.Ed.2d 640 (1979).  Similarly, appellant waived any error regarding the testimony concerning the stolen car, because he admitted that he stole the car from the salesman at gunpoint.  *Id.*

8. The charge contained the following paragraph concerning extraneous offenses:

Evidence has been introduced in this case regarding the defendant's having committed offenses other than the offense now alleged

against him.  You cannot consider this testimony for any purpose unless you believe beyond a reasonable doubt that the defendant committed such other offenses, if any.  Even then, you may only consider the same in determining the identity of the defendant, or the issues of intent, motive, system, scheme or design, in connection with this offense, and for no other purpose.

9. The FBI special agent also testified that a bullet removed from the body and a bullet found under a chair in the motel room could have been fired from that gun, but that he could not make that determination to the exclusion of all other guns.

unnecessary to the jury's comprehension of the charged offense. *Id.* at 88. Such evidence is inadmissible unless it is authorized as an "other purpose" under rule 404(b). *Id.*

■ In *Montgomery* we detailed the procedure for preserving error in the admission of extraneous offenses. The defendant must object that the evidence is inadmissible under rule 404(b), then the State must show that the proffered evidence is relevant apart from its tendency to show that the defendant is a criminal. *Montgomery*, 810 S.W.2d at 387. Further, the trial court should honor any request by the defendant for the State to articulate into the record the purpose for which the evidence is offered. *Id.* If the trial court determines that the evidence is relevant, the defendant must further object under rule 403.

Here, the State never offered the evidence for a limited purpose under rule 404(b), even though appellant requested that the State specify for what purpose the evidence was offered under the rule. Therefore, since the evidence of the aggravated bank robbery and the burglary were inadmissible as contextual evidence and were not offered as exceptions under rule 404(b), the trial court erred in admitting such evidence. We now decide whether that error was harmless. TEX.R.APP.P. 81(b)(2).

"Rule 81(b)(2) mandates that the appellate court focus upon the error and determine whether it contributed to the conviction or the punishment." *Harris v. State*, 790 S.W.2d 568, 585 (Tex.Cr.App.1989). Nevertheless, "the impact of the error cannot be properly evaluated without examining its interaction with the other evidence." *Id.* at 586. The question then is "whether a rational trier of fact might have reached a different result if the error and its effects had not resulted." *Id.* at 588.

At trial, appellant testified that he killed the deceased and that he knew that the deceased was a police officer when he killed him. The only issue was whether appellant acted in self-defense. As we ultimately hold in this opinion, even if the jury believed appellant's version of the facts, as a matter of law, the evidence did not constitute self-defense.[10] In light of appellant's admission to this offense, we are persuaded beyond a reasonable doubt that the error in admitting evidence of the aggravated bank robbery and the burglary did not contribute to appellant's conviction.[11] *Harris*, 790 S.W.2d at 584–88; TEX.R.APP.P. 81(b)(2).

■ We now consider the admissibility of appellant's "diary" that he contends tended to connect him to extraneous offenses. This "diary" was actually a 1988 week at a glance datebook containing miscellaneous names, figures, and notations. To constitute an extraneous offense, the evidence must show a crime or bad act, and that the defendant was connected to it. *Harris v. State*, 738 S.W.2d 207, 224 (Tex. Cr.App.) (op. on reh'g), *cert. denied*, 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987); *see* TEX.R.CRIM.EVID. 404(b). Here, the "diary" did not tend to connect appellant to any prior bad acts or crimes appellant may have committed. Indeed, it did not depict *any* criminal activity or bad acts, let alone those offered at his trial. As such the calendar was not excludable as an extraneous offense.

■ However, the calendar must be relevant before it can be admitted into evidence. *Mayes*, 816 S.W.2d at 84; TEX. R.CRIM.EVID. 402. The Texas Rules of Criminal Evidence define relevancy as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM.EVID. 401. The consequential fact or issue need

---

10. *See infra* the discussion of appellant's nineteenth point of error.

11. The evidence of the bank robbery and the burglary although not admissible at guilt-innocence would have been admissible at punishment. Art. 37.071, § 2(a), V.A.C.C.P. At pun-

ishment, the jury also heard testimony of numerous extraneous offenses much more heinous than the bank robbery, including the brutal rape of his ex-wife and two capital murders, each involving the rape and murder of a teenage girl.

not be contested before the evidence can be relevant. *Mayes*, 816 S.W.2d at 84. Evidence is relevant if it influences facts that concern the ultimate determination of guilt. *Id.*

■ Here, a witness who dated appellant for a short time testified that the "diary" belonged to appellant. The "diary" was relevant in that it was found in appellant's motel room, where this offense occurred, thus connecting appellant to the crime scene. TEX.R.CRIM.EVID. 401. Accordingly, appellant's twelfth through eighteenth points of error are overruled.

In his nineteenth point of error, appellant contends that "[t]he [t]rial [c]ourt erred in failing to require the State to negate the issue of self-defense in the application paragraph of the [c]ourt's [c]harge." Because we determine that the evidence at trial did not sufficiently raise self-defense, any error in the given self-defense charge was necessarily harmless.

■ According to appellant's testimony[12], Officer Hulsey knocked on appellant's motel room door and asked him for some identification. Appellant knew that Officer Hulsey was a police officer. Appellant inquired as to the reason, and asked if he was under arrest, or if the officer had an arrest or search warrant. Officer Hulsey responded that he just wanted to see appellant's identification. Appellant indicated that it was on the dresser and that he would get it.

Appellant partially closed the door, and went inside the room towards the general area of the nightstand on which in plain view was a gun. Officer Hulsey pushed the door open and, with his weapon drawn, told appellant to get against the wall. Appellant asked why, and the officer responded because "you have a gun over there." Appellant again asked if he was under arrest, or if the officer had an arrest or search warrant, to which Officer Hulsey responded negatively. Appellant asked the officer to leave his room. Officer Hulsey again told appellant to get against the wall and he finally complied.

Once appellant was against the wall, the officer placed his weapon to the back of appellant's neck. When Officer Hulsey lowered his weapon, appellant turned around and hit him in the face with his fist, causing the officer to fall back onto the bed. Appellant jumped on top of Officer Hulsey and the two struggled. Officer Hulsey bit appellant's trigger finger. Appellant testified that he was already angry, and when the officer bit his finger he became angrier. Appellant hit the officer in the head with a pen. They fell on the ground and the officer's weapon accidentally discharged, but no one was hurt.

They continued to struggle and appellant grabbed the stolen gun, pointed it at Officer Hulsey's head, and told him to drop his weapon. The struggle continued and the stolen gun accidentally discharged. Again, no one was hurt. Appellant hit Officer Hulsey with the butt of the stolen gun, and Officer Hulsey dropped his weapon. Appellant backed away from the bed and told Officer Hulsey not to reach for his weapon. But, the officer reached for it and appellant shot him twice. Officer Hulsey asked appellant not to shoot him again. Appellant agreed and fled the room. Appellant testified that he did not realize that he pulled the trigger because he had no feeling in that finger.

An investigating officer testified to oral statements made by appellant after he had been warned of his rights[13]. He testified that appellant chuckled and said, "I'll never forget the look in his [Officer Hulsey's] eyes as he begged me not to shoot him anymore." Appellant also said that when Officer Hulsey came to his room asking for identification, he had "planned to get [the stolen] gun and get the drop on the officer."

■ Appellant initiated the altercation that resulted in Officer Hulsey's death;

---

**12.** This entire account of what happened in the motel room the night appellant shot and killed Officer Hulsey is from appellant's testimony.

**13.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Art. 15.17(a), V.A.C.C.P.

there is no evidence in the record that appellant attempted to abandon the encounter once he initiated it. Further, the record reflects that Officer Hulsey did not use excessive force [14] and that appellant's resistance was unreasonable. The evidence did not sufficiently raise self-defense, and the error of omission, if any, in the charge was necessarily harmless. *See* V.T.C.A. Penal Code, § 9.31(b)(2) and (4). Appellant's nineteenth point of error is overruled.

Having reviewed all of appellant's points of error, we hold that each is without merit. Accordingly, the trial court's judgment is affirmed.

BENAVIDES, J., not participating.

CLINTON, Judge, dissenting.

I dissent to the majority's resolution of points of error complaining of the admission of extraneous offenses in this cause. The majority concludes that evidence that appellant was driving a stolen car was admissible as "contextual evidence." Op. at 571. The majority relies primarily on *Mayes v. State*, 816 S.W.2d 79 (Tex.Cr.App. 1991). Op. at 570 & 571–572, n. 8. *Mayes* expressly holds that "evidence of other crimes, wrongs, or acts," Tex.R.Cr.Evid., Rule 404(b), is not admissible if the only theory the State can articulate for its admissibility is that it provides "background" of the charged offense. Whether "other crimes, wrongs, or acts" may be proven simply because they occurred during the "same transaction," and thus constitute "context" of the offense, is a question left open by *Mayes* —not resolved by it, as the

majority opinion in this cause implies. Op. at 571. Under the new Rules of Criminal Evidence, more is required.[1]

To be admissible for some "purpose" other than one of those delineated in Rule 404(b) itself, evidence of "other crimes, wrongs, or acts" must have some relevance to an issue in the case. Tex.R.Cr.Evid., Rule 402. That is to say, it must have some "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R.Cr.Evid., Rule 401. Simply to observe that an extraneous offense is "contextual" is not sufficient to establish it has relevance apart from its character conformity value. And where evidence of "other crimes, wrongs, or acts" has only character conformity value, "the balancing otherwise required by [Tex.R.Cr.Evid.,] Rule 403 is obviated, the rulemakers having deemed that the probativeness of such evidence is so slight as to be 'substantially outweighed' by the danger of unfair prejudice *as a matter of law.*" *Montgomery v. State*, 810 S.W.2d 372, at 387 (Tex.Cr.App. 1991) (Opinion on rehearing on Court's own motion).

Apart from proclaiming "context," the majority does not identify any fact of consequence that evidence that the car was stolen makes more or less probable. Nor does the majority explain how evidence is "relevant" under Rule 401 just because it is (if it *is*, which is doubtful) "indivisibly connected to" the charged offense.[2] Op. at

**14.** Officer Hulsey was authorized to question appellant, and to investigate and to prevent the consequences of theft. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Worthey v. State*, 805 S.W.2d 435 (Tex.Cr.App. 1991); *Mays v. State*, 726 S.W.2d 937, 943–44 (Tex.Cr.App.1986), *cert. denied*, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988). Before Officer Hulsey went to appellant's motel room, he had witnessed appellant talking with someone the officer recognized as a drug dealer, appellant had outrun the officer in a car chase, and the officer knew that the license plate on appellant's car was stolen (indicating that the car too might also be stolen). Because the officer possessed all this information when he saw the gun in plain view in appellant's room, the

officer was authorized to enter appellant's motel room to protect his safety. *Id.*

**1.** All decisions cited as authority by the majority other than *Mayes* were prosecuted prior to the effective date of the new rules.

**2.** It is unclear to me why the majority believes the car was stolen as part of the "same transaction" as the shooting of Officer Hulsey in the hotel room. I would not think so. Thus, even assuming, as the majority mistakenly believes, that *Mayes* did hold that "same transaction" misconduct will always be admissible under Rule 404(b), supra, I do not see how that would render the offense here admissible.

571. It certainly is not self evident to me that the jury could not readily have understood what transpired in the hotel room between appellant and Officer Hulsey without knowing the car was stolen. In fact, I cannot imagine how that knowledge could have impacted the jury's deliberation of the material issues in this case one way or the other. Neither could the prosecutor, judging from his complete inability to identify a single fact of consequence the offense was relevant to prove. Op. at 570, n. 4. It appears the extraneous offense had no more purpose than to prejudice appellant unfairly by showing his general propensity to crime. It no more contributed to proving a consequential fact than did those we held were erroneously admitted in *Christopher v. State*, 833 S.W.2d 526 (Tex.Cr.App. 1992).

I cannot say beyond a reasonable doubt that, especially taken together with the evidence of the robbery in Baton Rouge and the burglary during which the gun was stolen, which the majority acknowledges was admitted in error, evidence of the stolen car made no contribution to the verdict. Tex.R.App.Pro., Rule 81(b)(2). Therefore I would reverse the judgment of the trial court and remand the cause for new trial. Because the majority does not, I respectfully dissent.