In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00141-CR
______________________________


GEORGE ALEMAN, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 248th Judicial District Court
Harris County, Texas
Trial Court No. 1012816


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â George Aleman appeals from his conviction by a jury for aggravated robbery. The
jury assessed punishment at twenty-five years' imprisonment. Aleman contends the trial
court committed reversible error by overruling his objections to the admission of evidence
that he had committed another theft on the same date as the aggravated robbery, and by
admitting evidence that the victim was pregnant at the time of the attack. We affirm. 
Â Â Â Â Â Â Â Â Â Â Aleman does not attack the sufficiency of the evidence, but we provide a brief
synopsis to provide context for our review. Aleman was convicted for attacking Melissa
Hanks in the parking lot of a convenience store. The attack occurred at about 4:25 p.m.
Hanks testified that, on arrival at the store, she exited her vehicle, with her car keys and
a small wallet in her hand. After exiting the car, she was approached by two males whom
she described as "Hispanic," one wearing blue jeans and a "mustard-colored" shirt, and
the other wearing blue jeans and no shirt. In court, she identified Aleman as the one with
no shirt and identified Abraham Gomez as the one wearing the "mustard-colored" shirt. 
Hanks testified that, as Aleman approached her, he grasped her arm, demanded the keys
to her car, and while she pleaded with him not to hurt her because she was pregnant, he
hit her on the head with a bottle. Hanks testified she gave Aleman the keys and threw her
wallet to the ground, but Aleman continued to grip her arm. As Hanks struggled to get free,
she managed to maneuver Aleman toward the front of the store. Aleman was apparently
on the ground, continuing to grasp Hanks' arm, when Hanks stepped on a "cement" step
and kicked Aleman on his head, causing Aleman to release her. Hanks ran into the store
and told an employee to call the police. Hanks testified that, while she was struggling with
Aleman, Gomez entered her vehicle and was sitting on the passenger's side. After she
broke free from Aleman, he too entered her car, on the driver's side, and tried
unsuccessfully to get it started. From inside the store, Hanks observed Gomez run away
with her purse, with Aleman following him. 
Â Â Â Â Â Â Â Â Â Â Police had left the store only a few minutes earlier after responding to a report that
two males had stolen beer from this particular convenience store. This theft took place at
about 3:30 that afternoon. Officer D. J. Patterson testified he left the store at about
4:05Â p.m. Officers responding to the Hanks robbery apprehended Gomez almost
immediately. Aleman was arrested the next day, exhibiting a head injury for which he was
hospitalized. 
Â Â Â Â Â Â Â Â Â Â Aleman first complains the trial court erred by admitting evidence that he had
committed an extraneous offense. His point of error addresses only the testimony of Abdul
Allana, the owner of the convenience store. Over a running objection, Allana testified he
saw two boys in his store steal beer and agreed they were the same two who were outside
the store with the woman who was attacked. 
Â Â Â Â Â Â Â Â Â Â We review the trial court's determination of admissibility of evidence under an abuse
of discretion standard. Montgomery v. State, 810 S.W.2d 372, 378â79 (Tex. Crim. App.
1990). Rule of Evidence 404(b) prohibits the use of evidence of a defendant's other bad
acts or wrongs to prove that such defendant acted in conformity with his or her character. 
Tex. R. Evid. 404(b). Evidence of extraneous offenses may be admitted for other
purposes, however, such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident. See id. It may also be admitted
as contextual evidence.


 Thus, the evidence may be admitted if the proponent convinces
the court that it is relevant to establish some elemental fact, such as identity or intent; that
it tends to establish some evidentiary fact, such as motive, opportunity or preparation,
leading inferentially to an elemental fact; or that it rebuts a defensive theory. Marc v. State,
166 S.W.3d 767, 775 (Tex. App.âFort Worth 2005, pet. ref'd); Massey v. State, 933
S.W.2d 582, 586 (Tex. App.âHouston [1st Dist.] 1996, no pet.).
Â Â Â Â Â Â Â Â Â Â Allana's identification of Aleman and Gomezâweakened by the evidence that he
could not see clearly through the doors of the store and by the distance between him and
the attackâwas strengthened by his ability to identify them as also being the two who had,
very shortly before, stolen beer from his store. The identity of the attacker was at issue,
and evidence that the same person, wearing the same clothes, had within the hour
returned to the scene of one crime and committed another is evidence that tends to
establish the elemental fact of identity. 
Â Â Â Â Â Â Â Â Â Â The remaining question raised by Aleman is whether the evidence was of such a
nature that it should nonetheless have been excluded under Tex. R. Evid. 403 because its
probative value was substantially outweighed by the danger of unfair prejudice. Rule 403
favors admissibility of relevant evidence, and the presumption is that relevant evidence will
be more probative than prejudicial. Montgomery, 810 S.W.2d at 388â89 (op. on reh'g). 
In Santellan v. State, 939 S.W.2d 155 (Tex. Crim. App. 1997), the Texas Court of Criminal
Appeals restated the factors discussed in Montgomery that should go into the balancing
test: 
(1) how compellingly the extraneous offense evidence serves to make a fact
of consequence more or less probable--a factor which is related to the
strength of the evidence presented by the proponent to show the defendant
in fact committed the extraneous offense; 
Â 
(2) the potential the other offense evidence has to impress the jury "in some
irrational but nevertheless indelible way"; 
Â 
(3) the time the proponent will need to develop the evidence, during which
the jury will be distracted from consideration of the indicted offense; and 
Â 
(4) the force of the proponent's need for this evidence to prove a fact of
consequence, i.e., does the proponent have other probative evidence
available to him to help establish this fact, and is this fact related to an issue
in dispute. 

Id. at 169 (footnote omitted).
Â Â Â Â Â Â Â Â Â Â In this case, Hanks testified compellingly that Aleman was her attackerâshe saw
him up close and fought with him in broad daylight. She kicked him on the head, and when
he was arrested the next day, he had a head injury. Hanks also testified she viewed the
surveillance video recording of the interior of the store and recognized Aleman from that
recording. The nature of Allana's testimony about the prior event was extremely brief,
consuming very little time or attention. 
Â Â Â Â Â Â Â Â Â Â It is appropriate to allow evidence to prove identity, and even though there was other
strong testimony about Aleman's actions, evidence from an unrelated source identifying
Aleman as an attacker was appropriate to help ensure that justice was served. We find
the trial court's decision, based on these factors, to be within the zone of reasonable
disagreement. 
Â Â Â Â Â Â Â Â Â Â Aleman also directs us to testimony by Patterson that, while he was investigating
the robbery, he also reviewed the surveillance video recording at the convenience store. 
The video recording was taken shortly before the attack on Hanks. This recording did not
show the robbery at bar; however, it did show two Hispanic males shoplifting two six-packs
of beer. In his testimony, Patterson described the general appearance of these two males
and their clothing, including the fact that one of them was wearing a yellow shirt. He did
not identify either as participants in the Hanks robbery.
Â Â Â Â Â Â Â Â Â Â Aleman does not direct this Court to any other testimony by Patterson. However,
Patterson did later testify that, after cruising the area, he located and arrested a man in a
yellow shirt, who was not Aleman, but Gomez. Even though it is evidence of an extraneous
offense, it is not clear that Patterson's testimony links Aleman directly to that offense, and
Aleman has not shown us how it should be so linked. To constitute an extraneous offense,
the evidence must show a crime or bad act and the defendant's connection to it. Lockhart
v. State, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992). The contention of error is
overruled.
Â Â Â Â Â Â Â Â Â Â Aleman next contends the court erred by allowing evidence that the victim was
pregnant at the time of the attack. He argues that it is not relevant to the issue of guilt or
innocence, and clearly is the type of evidence that was unfairly prejudicial. At trial, Aleman
made a motion in limine in which he asked the court to prohibit the State from questioning
the victim about the fact she was pregnant at the time of the attack. When testimony about
that matter was introduced, however, counsel did not object. It is well-settled that the
denial of a motion in limine is not sufficient to preserve error for review, but, rather, there
must be a proper objection to the proffered evidence. Martinez v. State, 98 S.W.3d 189,
193 (Tex. Crim. App. 2003); McDuff v. State, 939 S.W.2d 607 (Tex. Crim. App. 1997). We
have reviewed the record and find no timely objection to that testimony. The claimed error
has not been preserved for review.
Â Â Â Â Â Â Â Â Â Â We affirm the judgment. 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â February 2, 2006
Date Decided:Â Â Â Â Â Â Â Â Â March 14, 2006

Do Not Publish



one;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-111-CR%20In%20re%20%20Mark%20&%20Rhonda%20Lesher%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-11-00111-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  IN
RE:Â  

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MARK LESHER AND RHONDA LESHER

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Original
Mandamus Proceeding

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  A court of inquiry
is a criminal proceeding authorized by and conducted according to Chapter 52 of
the Texas Code of Criminal Procedure. Â See Tex.
Code Crim. Proc. Ann. arts. 52.01Â.09 (West 2006). Â When a district judge, Âacting in his capacity
as magistrate, has probable cause to believe an offense has been committed
against the laws of this state, he may request that the presiding judge of the
administrative judicial district appoint a district judge to commence a Court
of Inquiry.Â Â Tex. Code Crim. Proc. Ann. art. 52.01(a).

Â Â Â Â Â Â Â Â Â Â Â  In Red River
County, Texas, Mark and Rhonda Lesher were indicted for the aggravated sexual
assault of Shannon Renae Coyel.Â  A jury
found the Leshers were not guilty of the offense.Â Â  The Leshers filed a petition for a court of inquiry,
alleging that Coyel perjured herself by making several inconsistent and/or
contradictory statements under oath in related grand jury and trial proceedings
and that Red River County District Attorney, Val Varley, was either unwilling
or unable to prosecute her.Â  The trial
court denied the petition. 

Â Â Â Â Â Â Â Â Â Â Â  The Leshers
seek a writ of mandamus asserting that the trial court was required to find the
existence of probable cause and grant their petition. Â They request this Court to order the District
Judge to find probable cause that Coyel committed a crime, substitute our own
findings, and order a court of inquiry.[1]Â  We find the trial court acted within its
discretion to deny the petition for a court of inquiry and deny the petition. 

Â Â Â Â Â Â Â Â Â Â Â  Mandamus is
an extreme remedy, and to be entitled to mandamus relief, a petitioner must
show that the trial court clearly abused its discretion and that the relator
has no adequate remedy by appeal. Â In re McAllen Med. Ctr., Inc., 275
S.W.3d 458 (Tex. 2008) (orig. proceeding).Â 
The Texas statutes governing courts of inquiry, Chapter 52 of the Texas
Code of Criminal Procedure, do not provide for an appeal from the judgeÂs
determination, and a party may appeal only that which the Legislature has
authorized. Â Olowosuko v. State, 826 S.W.2d 940, 941 (Tex. Crim. App. 1992); In re Court of Inquiry, No.
06-10-00171-CR, 2010 WL 3894220 (Tex. App.ÂTexarkana Oct. 6, 2010, no pet. h.);
McCarver v. State, 257 S.W.3d 512 (Tex.
App.ÂTexarkana 2008, no pet.); In re
Court of Inquiry, 148 S.W.3d 554, 555 (Tex. App.ÂEl Paso 2004, no pet.).Â  Therefore, the Leshers have no adequate
remedy by appeal. 

Â Â Â Â Â Â Â Â Â Â Â  The statute
allows a district judge to request the appointment of another judge to conduct
a court of inquiry if the judge finds that probable cause exists to believe an
offense has been committed.Â  Tex. Code Crim. Proc. Ann. art.
52.01(a).Â Â  Here, the petition included
copies of CoyelÂs testimony before the grand jury and the trial jury that show
her testimony to be inconsistent.Â  The
trial court denied the petition and found: Â (1) that the petition was frivolous;
(2)Â that a special prosecutor and the areaÂs Texas Ranger determined that
no prosecution for perjury or aggravated perjury was justified; and (3) perjury
charges against Coyel were pending in Collin County.Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Before requesting
a court of inquiry, a district judge must find that probable cause exists that
an offense has been committed, but the law does not require that the judge
request the inquiry; it is discretionary.Â 
Tex. Code Crim. Proc. Ann.
art. 52.01(a) (ÂWhen a judge . . . has probable cause . . . he may request that the presiding judge . .
. appoint a district judge to commence a Court of Inquiry.Â) (emphasis
added).Â  Accordingly, we find that the
trial court did not abuse its discretion in denying the LeshersÂ petition.Â  

Â Â Â Â Â Â Â Â Â Â Â  We deny the
petition for writ of mandamus. 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date
Submitted:Â Â Â Â Â Â Â Â Â  June 23, 2011

Date
Decided:Â Â Â Â Â Â Â Â Â Â Â Â  June 24, 2011

Â 

Do
Not Publish











[1]The
petition also states that the trial court erred in failing to recuse, but
failed to brief the issue or provide any documentation that a motion to recuse
was filed or acted on. Â A point of error
that is conclusory and cites no authority presents nothing for review, and we
will not address it.Â  See Tex.
R. App. P. 38.1; Hankins v. State, 132 S.W.3d 380, 385
(Tex. Crim. App. 2004); Vuong v. State,
830 S.W.2d 929, 940 (Tex. Crim. App. 1992).