**Stanley Mark PARSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–05–00063–CR.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 29, 2005.

Decided March 10, 2006.

Rehearing Overruled April 4, 2006.

Steven R. Miears, Bonham, John William Thomas Biard, IV, McLaughlin, Hutchison, Starnes & Biard, Paris, for appellant.

Gary D. Young, County & Dist. Atty., Deborah Moore, Asst. County Atty., Paris, for state.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Stanley Mark Parson appeals from his conviction by a jury for aggravated assault with a deadly weapon.[1] The jury found that Parson had been previously convicted of two felony offenses and set his punishment at ninety-nine years' imprisonment.

Parson appeals, contending the trial court erred: 1) by admitting into evidence the victims' prior inconsistent statements when the victims recanted those statements at trial; 2) by improperly admitting evidence of extraneous offenses at both the guilt/innocence and punishment phases of the trial; 3) by admitting opinion testimony from a licensed professional counselor that the alleged victims, Parson's wife and stepson, suffered from "battered woman's syndrome"; and 4) by several mistakes in the court's charge to the jury. Parson also contends the evidence is factually and legally insufficient to support his conviction on one count involving his wife because there was no evidence he caused her bodily injury or that he used a deadly weapon. We affirm.

## Background

The evidence shows that, while Parson was drinking himself into a near stupor at his home, his wife, Waynell Parson, and his sixteen-year-old stepson, Richard Havner, went next door to the home of Waynell's[2] sister-in-law, Terry McCloud. Parson telephoned next door and told Waynell and her son to return home. They did, and an argument ensued between Parson and Waynell, which escalated when Way-

1. Parson was convicted in this case on two counts of aggravated assault against his wife, and under another cause number, one count of aggravated assault against his stepson. The cases were tried together, and the issues raised in both appeals are identical, except for the additional contention in this case that the evidence supporting the verdict on one of the counts of aggravated assault against his wife is legally and factually insufficient.

2. We refer to Parson's wife by her first name to distinguish her from her husband.

nell and Havner tried to leave once more. There is evidence that Havner exited the house, but when Waynell attempted to leave, Parson got a gun and pushed Waynell back into the house, injuring her in the process. There are also statements in evidence made by Waynell and Havner that Parson pointed the gun at them and threatened them. The evidence further shows that Waynell and Havner managed to retreat to McCloud's house, where an emergency call was placed to the Lamar County sheriff's office. When officers arrived, they spent over two hours attempting to locate Parson. They finally found him behind his house, beside a small chicken coop and under a bush, unconscious, and with two rifles nearby.

At trial, Waynell and Havner recanted their prior statements to the officers and recanted their grand jury testimony, and testified Parson never actually pointed a weapon at them. Parson was convicted of aggravated assault by pushing Waynell into a door while using a deadly weapon. He was also found guilty of aggravated assault by threatening Waynell while pointing a deadly weapon at her. In the other case, the jury found Parson guilty of aggravated assault by threatening Havner with imminent bodily injury while using a deadly weapon.

**Prior Inconsistent Statements**

■ Parson first contends the court erred by admitting Havner's statements into evidence. Parson objected to the admission of the exhibits based on hearsay and because the witness admitted in court he had made the prior statements.

■ Rule 613 of the Rules of Evidence provides that a prior inconsistent statement of a witness is admissible for impeachment of the witness. Tex.R. Evid. 613. However, the rule also explicitly states that the extrinsic evidence of the statement itself is only admissible if the

witness refuses to admit making the statement. This is not merely a refusal to admit making a statement, but refusing to admit making the contents of the statement. *See McGary v. State,* 750 S.W.2d 782, 786 n. 3 (Tex.Crim.App.1988); *Staley v. State,* 888 S.W.2d 45, 49 (Tex.App.-Tyler 1994, no pet.). The courts reason that, when a defendant admits making the statement, it is unnecessary to admit the document itself because the witness impeaches himself or herself. *McGary,* 750 S.W.2d at 786.

In this case, Havner testified that Parson never threatened him with the gun, but admitted he had made a previous written statement that said otherwise. He was asked:

Q. Did he ever threaten you with that gun?

A. No, sir.

Q. Have you ever testified or had a statement that says otherwise?

A. Yes, sir.

A written statement was given to Parson to read silently. After he read the statement, he admitted that he signed it voluntarily. He then testified:

Q. You testified today that he didn't threaten you?

A. Yes, sir.

Q. Did you previously make a statement that he did threaten you?

A. Yes, sir.

Q. Is the statement true, or is what you're telling today true?

A. What I'm telling today.

The State then offered the statement as an exhibit. Over objection, the court admitted the exhibit.

Havner was then questioned at trial about the testimony he had given before the grand jury. In that testimony he had said his statement was true and correct,

and then testified regarding what had happened on the occasion in question. Havner testified at trial that what he had told the grand jury was not true. Over objection, the State also introduced three exhibits, consisting of three pages of the proceedings before the grand jury.

After the written statement was introduced into evidence, the State questioned Havner about the way the statement was taken and about the witnesses thereto (his mother, his aunt, and his sister), whose signatures were on the documents.

The State's counsel asked Havner:

Q. You told those three people that he put this gun up, pointed it at somebody and threatened to shoot.

A. Yes, sir.

Q. And that's true?

A. No, sir.

Q. So today you've got a different story?

A. I didn't see him point the gun at anybody.

Q. According to this: "He came at us with his gun, saying stop or I'll shoot you. Then he pushed my mom into the door."

A. I didn't see it.

Q. Did he say stop or I'll shoot you?

A. No, sir.

Q. Have you ever testified other— other than just the statement, have you ever testified differently to that?

A. Yes, sir.

The State then had Havner read approximately fifteen lines of his grand jury testimony in which (among other things) Havner identified the weapon and stated that Parson had pointed it at him and his mother, that Parson had threatened to shoot them if they continued to try to leave the house, and that he had the gun on his shoulder like he was going to fire it. The

State then asked a series of questions designed to point out, with no possibility for evasion, that Havner had given a statement and testified in one way before a grand jury, and was now testifying to the contrary on two particular (but critical) points: whether Parson pointed the gun at them and whether he threatened them.

The issue is whether, in light of the fact that Havner admitted making the statements, the trial court erred by initially admitting the documents into evidence. Under the plain language of the rule, the court erred. For example, as described in *McGary,* when the witness admits making the statement, but on questioning denies portions of the statement, the portion that contradicts the witness may be proven for impeachment. *McGary,* 750 S.W.2d at 787. However, when the witness unequivocally admits making the prior statements, "the instrument itself is not admissible, but the examining attorney may ask about specific sentences, remarks, or things in the prior statement." *Id.* In that case, the court ultimately held that the admission of the entire statement was error and that the reading of the statement to the jury was improper impeachment. The court recognized that the state also used the evidence as proof of the offense, and so argued to the jury. Under the former harmless error standard of review, the court reversed because it could not conclude the improper impeachment was harmless beyond a reasonable doubt. *Id.* at 788; *Staley,* 888 S.W.2d at 49.

In this case, Havner unequivocally admitted making the statements and unequivocally admitted that his testimony at trial was diametrically opposite to that in his written statement and in his prior testimony before the grand jury. There was no suggestion that his admissions in court as to his inconsistent statements were in any way equivocal, and they do not appear

so. Under this state of the record, the impeachment was complete when Havner made those specific admissions, and the rule thus provides that the extrinsic evidence of the written statement and Havner's prior grand jury testimony were not admissible as evidence. The court erred by admitting the documents over objection.

■ The remaining question is whether the error was harmful. In our review of nonconstitutional error, we are to disregard errors, defects, irregularities or variances that do not affect the substantial rights of the accused. Tex.R.App. P. 44.2(b). A "substantial right" is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266 (Tex.Crim.App.1997); *see* Tex.R.App. P. 44.2(b). For claims of nonconstitutional error, the Texas Court of Criminal Appeals has held that "a conviction should not be overturned unless, after examining the record as a whole, a court concludes that an error may have had 'substantial influence' on the outcome of the proceeding." *Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim.App.2002). In other words, if we have "a grave doubt" that the result was free from the substantial influence of the error, then we must reverse. *Id.* The Texas Court of Criminal Appeals has explained that "grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* (citing *O'Neal v. McAninch*, 513 U.S. 432, 433–36, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)). Thus, "in cases of grave doubt as to harmlessness the petitioner must win." *Burnett*, 88 S.W.3d at 637. If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight effect," we must conclude the error was not harmful and allow the conviction to stand. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

■ A related issue we will address before determining harm is the question of whether the court erred by refusing to give an instruction in the jury charge that would have restricted the jury's consideration of the written statement and grand jury testimony to the purpose of impeachment.

It is clear from the heading of Rule 613 that the rule governs admission of prior statements for purposes of impeaching the witness. However, in this case, Parson did not seek to have the jury instructed about the limitation at the time the evidence was introduced. There is direct authority stating that evidence admitted for all purposes becomes part of the general evidence in the case, and that a limiting instruction is therefore inappropriate. *Hammock v. State*, 46 S.W.3d 889 (Tex.Crim.App.2001). Thus, the court did not err by failing to submit a limiting instruction to the jury.

The evidence before the jury on these allegations consisted of Havner's testimony—that Parson had a gun, but had neither threatened nor pointed it toward anyone—countered by Havner's admission that he had stated otherwise both in his prior written statement and in his testimony before the grand jury. McCloud testified unwillingly that Waynell had come to her house—frightened, upset, and crying—and saying that Parson had a gun. She testified Waynell had told her Parson had pointed the gun at Havner and then pushed her back in the house with him. McCloud also testified that Waynell told her Parson had told Havner to "stop or I'll shoot," and that Havner had cut his foot while running across the open field between their houses. McCloud also testified Waynell had later called her, said her first story was incorrect, and told McCloud that those events had not happened.

Officer Anson Amis testified that, when he answered the call on the incident, he went to McCloud's house and found Waynell and Havner crying on McCloud's couch. Amis testified Waynell told him Parson had pointed a rifle at them. After that, Amis and Deputy Ken Carpenter went to Parson's house, looking for him. Parson did not answer the door, so they waited until additional officers arrived, and then searched the area. They found Parson behind his house.

Officer Joe Tuttle, who arrived with the additional officers, testified that they obtained a key to the house from Waynell and that, after determining Parson was not in the house, they searched the grounds and located him on the west side of a small chicken coop behind his house—passed out under a bush. Nearby, they found a .22 single-shot rifle and a 6 mm. semiautomatic rifle. Neither was loaded, and no ammunition was nearby.[3]

Carpenter, one of the original responders, testified that, when he talked to Havner, Havner was frightened because Parson had pointed a gun at him.

Waynell's testimony is a remarkable mix. She did not deny telling the officers about the incident as described above. She did not deny testifying to that effect before the grand jury. At trial, however, after being taken through the material points of her statement and testimony, she then testified that none of these things ever happened.

It is significant to note Waynell further testified that, after her initial contact with Carpenter concerning this incident, she later told Carpenter that Parson had attempted to get her to change her testimony before she went to the grand jury, had asked her to say she could not remember anything and to tell people she was drunk and high, and that Parson had "said that I was turning against him and that he would take me down ... [that] [h]e would see to it that we were taken care of so just go ahead and testify against him." Waynell testified she told Carpenter she "felt that [Parson] meant that he would have me and my son killed." Waynell also testified she told Carpenter that Parson told her "he would take care of business" if she testified against him and that Parson said he could get her "even if [he] was behind bars." Waynell then testified at trial she had testified before the grand jury that, on the occasion in question, Parson had a rifle, that it appeared he was trying to put a bullet in it, and that he had the rifle to his shoulder and had pointed it at her son's head.

After initially denying that Parson had read her grand jury testimony to her over the telephone, she finally admitted that he had read parts of it to her and that he had called her many times. She also testified Parson had asked her to contact the district attorney about her story. The flavor of her testimony is shown by the following excerpt:

Q. He's never encouraged you to tell somebody you can't remember?

A. No.

Q. Never once?

A. He did not encouraged [sic] me to say that, no.

Q. That's different than what you told the grand jury.

A. Yes.

Q. You told the grand jury that's what he had done?

A. Yes.

Q. You told Corporal Carpenter that he threatened to kill you if you didn't do it?

---

**3.** Ammunition was found in the house.

A. Those weren't exactly my words.

Q. Well, your exact words being: That if he still went to prison, he would have me and *my son took out*?

A. Yes.

Q. Did you take that to mean that he would kill you?

A. If someone says that, yes.

Q. And that's what you told Corporal Carpenter on December the 5th.

A. Yes.

Q. Two days before you showed up for the grand jury?

A. Yes.

. . . .

Q. In your grand jury testimony . . . you were asked, "Would you agree with me that he tried to influence your testimony falsely." What did you tell the grand jury?

A. "He didn't want me to. He just wanted me to say that I couldn't remember."

Q. He wanted you to lie, didn't he? And what did you say when—

A. He wanted me to say that I didn't remember.

Q. That's the same thing the defendant told you in a phone conversation.

A. No, he said that—

Sergeant Travis Rhodes, one of the backup officers, testified that he had spoken to Waynell when he arrived and that she told him Parson had pointed a rifle at both her and her son. He also testified that, in his opinion, Waynell was not high or intoxicated. He also testified Waynell had fresh bruises on her back and above her right eye.

Claire Haslam, a licensed professional counselor, testified as an expert about battered woman's syndrome, and ultimately opined that both Waynell and Havner had anxious attachments consistent with the syndrome, including the "willingness to do whatever it takes to belong."

We conclude the State had the right to place the material portions of Havner's written statement before the jury so that the State could show that Havner's story had changed. The State did so, and Havner had full opportunity to attempt to explain the differences. The State also properly placed Havner's specific prior statement before the jury in its effort to clearly show those differences and to obtain testimony from Havner either admitting or denying that the statements were his own. The error in this case was allowing the statement, in its entirety, to be placed into evidence as an exhibit, in light of Havner's explicit admission of the differences between his prior statement and his trial testimony. With the exception of the highlighted differences as discussed above, Havner's statement was entirely consistent with his trial testimony. Under these facts, and in light of the entirety of the proceeding, we do not believe this error exerted a "substantial influence on the outcome of the proceeding."

Parson's argument concerning Havner's testimony before the grand jury is even less compelling. Although Havner was questioned extensively about that testimony, his entire testimony was not placed before the jury—only brief excerpts from three separate pages were actually tendered as exhibits. Again, because Havner admitted their contents and the differences between that testimony and his testimony at trial, the court erred by admitting the excerpts from the documents themselves as exhibits. However, in light of their brevity, and the way in which each was discussed in detail with Havner, providing him full opportunity to explain the differences, and in light of the proceedings as a whole, we also find this error did not exert a "substantial influence on the outcome of

the proceeding." The contentions of error are overruled.

■ Parson next contends the trial court erred by admitting exhibits 32, 35, 39, and 48, containing Waynell's prior statements concerning the incident in question. Exhibit 32 is a typed, two and one-half page single-spaced statement she gave to police May 17, 2004. Exhibit 35 is a three-page handwritten statement made by her on May 16, 2004. Exhibit 39 is a transcription of twenty-eight pages of Waynell's grand jury testimony given December 7, 2004. Exhibit 48 is a one-page handwritten statement, dated December 5, 2004, in which she had informed Carpenter about the threats Parson had made against her and Havner in connection with her upcoming grand jury testimony. In each instance, the same situations were broached as discussed above—Waynell testified at trial that her statements and grand jury testimony were untrue concerning Parson's use of the rifle to threaten her and her son.

■ These exhibits reflect many of the same problems as discussed concerning Havner's testimony. However, the objections raised were not consistent. Parson objected to the admission of exhibits 32 and 35 based solely on hearsay. That is not the issue raised on appeal, and the contention now raised has thus not been preserved for our review. *See* Tex.R.App. P. 33.1. For a contention to be raised on appeal, it must have been raised at trial by objection. Error is not preserved for review if it varies from the objection. *Ibarra v. State*, 11 S.W.3d 189, 196 (Tex.Crim. App.1999).

The objection made to the admission of exhibits 39 and 48 was that they were hearsay and that an improper predicate was laid for their admission. On appeal, so far as we can glean the intent of the point of error, Parson complains the State

committed reversible error by pursuing its questioning of Waynell concerning her prior statements, after the court, in a discussion outside the presence of the jury, had advised her she could invoke her Fifth Amendment right not to testify further about her prior statements. However, after the jury returned, and questioning resumed, Waynell did not invoke that right.

Parson suggests on appeal the State acted improperly by calling Waynell as a witness for the sole purpose of impeachment. That solitary motivation is not shown by the record. When the state has statements and prior sworn testimony of a sequence of events, even in light of its suspicion that the witness might testify differently, it may still assume that the witness will testify truthfully and that prior sworn testimony was also truthful. The state is then entitled to determine the final content of the witness' testimony, and if necessary, to impeach such a witness with previous testimony and statements made by that witness to police. Error has not been shown.

### Extraneous Offenses at Punishment Phase

Parson next contends the court erred by admitting evidence at the punishment phase of the trial concerning unadjudicated offenses that occurred before September 1, 1993. He contends, based on *Voisine v. State*, 889 S.W.2d 371, 372 (Tex.App.-Houston [14th Dist.] 1994, no pet.), that only evidence of final convictions is admissible if the bad act occurred before the effective date of the authorizing statute. Tex.Code Crim. Proc. Ann. art. 37.07(3)(a) (Vernon Supp.2005). *Voisine* contains a discussion of the (then) newly enacted statute, pointing out that, before September 1, 1993, unadjudicated extraneous offenses were not admissible at the punishment trial of a noncapital case. However, the

issue addressed there was whether those unadjudicated offenses were admissible when the offense being tried was committed before the effective date of the statute, but trial for the offense took place after its effective date. *Voisine* does not support Parson's position that evidence of the unadjudicated offenses is inadmissible if such offenses occurred before the date the statute became effective, and we are aware of no authority on that point. The contention of error is overruled.

### Expert Testimony

 Parson next contends the court erred by admitting expert opinion testimony from Haslam that Waynell and Havner suffered from "battered woman's syndrome" and that this explained why their testimony at trial differed from their prior statements and testimony. In support of this position, he directs our attention to our opinion in *Edwards v. State*, 107 S.W.3d 107, 115 (Tex.App.-Texarkana 2003, pet. ref'd), where we noted that an expert may not testify a witness is truthful, but may testify the witness exhibits symptoms consistent with sexual abuse. As we noted there, to be admissible, expert testimony must "assist" the trier of fact. TEX.R. EVID. 702; *Duckett v. State*, 797 S.W.2d 906, 914 (Tex.Crim.App.1990). Expert testimony assists the trier of fact when the jury is not qualified to "the best possible degree" to determine intelligently the particular issue without the help of the testimony. *Edwards*, 107 S.W.3d at 115; *Duckett*, 797 S.W.2d at 914. The expert testimony must aid—not supplant—the jury's decision. *Id.* Expert testimony does not assist the jury if it constitutes "a direct opinion on the truthfulness" of the testimony. *See Edwards*, 107 S.W.3d at 115; *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim.App.1993).

In this case, Haslam did not cross that line. She testified about the syndrome and opined about its effect on the truthfulness of its victims where their difficulties with their spouses are concerned. She did not, however, directly address whether these particular witnesses were testifying truthfully. Error has not been shown. The contention of error is overruled.

### Charge Error

 Parson next contends the court, sua sponte, inserted language in the jury charge on guilt or innocence that reversed the burden of proof and negated the presumption of innocence as it applied to the jury's consideration of lesser-included offenses in both cause numbers. Counsel timely objected to the language complained of on appeal.

Now, if you find from the evidence beyond a reasonable doubt that on or about May 16, 2004, in Lamar County, Texas, the defendant, Stanley Mark Parson, did then and there intentionally or knowingly threaten Waynell Parson with imminent bodily injury and did then and there use or exhibit a deadly weapon, to-wit: a rifle, during the commission of said assault, as alleged in Count Two of the indictment, you will find the defendant guilty as charged.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

If you have a reasonable doubt thereof that the defendant is *not* guilty of aggravated assault as charged in Count Two of the indictment you will next consider whether the defendant is guilty of the offense of deadly conduct. . . .

. . . .

If you have a reasonable doubt thereof that the defendant is *not* guilty of deadly conduct you will next consider whether the defendant is guilty of the offense of simple assault. . . .

In each instance, the court hand wrote an inserted "not" in the locations emphasized in the quoted text. We recognize that jury charges are often unnecessarily convoluted, but it appears clear the charge was correct until the court inserted "not." As it was revised, it instructed the jury to consider the lesser offense if it had a reasonable doubt that Parson was not guilty of the crime instead of if it had a reasonable doubt he was guilty of the crime.

However, under these facts, the error is not material. The jury found in both cases that Parson was guilty of the higher crime *under a charge correctly requiring the State to prove guilt beyond a reasonable doubt* and thus did not need to go on to the portion of the charge involving the lesser-included offenses. This is not a situation where the language changed the constitutionally required burden of proof; it is a situation where, had the jury failed to find Parson guilty of the primary charge, it may have been confused about what was necessary before it could reach the lesser offenses. In that instance, any harm analysis would be under *Almanza*.

 Under that standard, when a defendant raises a proper objection at trial, reversal is required if this error was calculated to injure the defendant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g); *Aguilar v. State*, 914 S.W.2d 649, 651 (Tex.App.-Texarkana 1996, no pet.). The presence of any harm, regardless of degree, is sufficient to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App.1994). The defendant has the burden of proof to persuade this Court that he suffered some actual harm as a consequence of the charging error. *Id.*

In this instance, even though error exists, for the reasons set out above, it is not apparent that any actual harm was suf-fered by Parson because of this error. The contention of error is overruled.

**Extraneous Offenses at Guilt/Innocence Phase**

 Parson next contends the trial court erred by admitting testimony that Waynell and Havner had, on earlier occasions, spent the night away from Parson at McCloud's house in order to "get away" from him. Parson contends this is proof of an extraneous matter, not relevant to this offense, and was more prejudicial than probative. At trial, counsel objected that such constituted a "more prejudicial than probative, extraneous offense." The court overruled the objection, and Havner testified he and his mother had left Parson's house before, usually when Parson was drinking.

 Parson contends this was evidence of an extraneous offense. It is not. There is no detail about why they had left the house before—only that they did so when Parson was drinking. The remaining question is whether the evidence should have been kept out because it was more prejudicial than probative. Trial courts are required to exclude evidence when its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R. EVID. 403; *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex.Crim.App. 1990) (op. on reh'g). In making this determination, the court should "consider the inherent tendency that some evidence may have to encourage resolution of material issues on an inappropriate basis and should balance carefully against it the host of factors affecting probativeness, including relative weight of the evidence and the degree to which its proponent might be disadvantaged without it." *Fuller v. State*, 829 S.W.2d 191, 206 (Tex.Crim.App.1992).

 A trial court's decision in balancing these factors is reviewed under an

abuse of discretion standard and is disturbed on appeal only when the trial court's decision falls outside the zone of reasonable disagreement. *Montgomery*, 810 S.W.2d at 391–92.

In this case, testimony that Havner and his mother had spent nights away from Parson before, even "to get away from him," is not of such magnitude as to improperly sway a jury with emotion rather than reason. It lies within the zone of reasonable disagreement. The contention of error is overruled.

### Legal and Factual Sufficiency

■ Parson next contends there was legally and factually insufficient evidence to support the verdict of guilt—specifically, that Parson used a deadly weapon and that he caused bodily injury to Waynell by pushing her into a door. In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). In our review of the evidence for factual sufficiency, we view all the evidence in a neutral light and determine whether the evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Threadgill v. State*, 146 S.W.3d 654, 664 (Tex.Crim.App.2004) (citing *Zuniga v. State*, 144 S.W.3d 477, 486 (Tex.Crim.App.2004)).

We have previously set out the evidence in detail. The specific evidence on this point consists of testimony that Waynell had told McCloud that Parson pointed the rifle at Havner and was then pushing Waynell back in the house with him, and that Waynell told responding officers Parson had pointed a rifle at her and her son. Havner's written statement read that Parson had come at them with a gun, saying, "stop or I'll shoot you," and then pushed Waynell into the door. There are also photographs of Waynell taken on the day of and the day after the incident. Rhodes testified he saw swelling and redness about Waynell's eye and a bruise on her back. In her statement, Waynell had recounted a bruise on her left chin, a bruise below her left knee, bruises and scratches on her right forearm, two bruises on her back, scratches on her hands, and that she "[felt] like [she had] been run over by a Mack truck." Rhodes testified Waynell's injuries were fresh and were consistent with her story at that time.

The evidence shows that Waynell sustained some bodily injuries, that the timing of those injuries was consistent with the time of the incident, and that she originally stated they were as a result of the incident. The evidence clearly shows that Parson had a gun in his hands and that he was attempting to push Waynell into the door of their house. The offense, as set out by the charge, required only that Parson cause bodily injury, while using or exhibiting a deadly weapon. The evidence is legally sufficient to support the finding.

The contrary evidence consists of Waynell's and Havner's testimony—which was essentially that, although Parson had a gun in his hands, he did not directly threaten to use it, and he did not point it directly at them. That testimony, however, as recounted at length previously, was severely impeached by testimony about Parson's efforts to derail Waynell's and Havner's testimony and encourage them to conveniently "misremember" the incident.

The jury was entitled to draw its conclusions from the evidence, and the evidence against its verdict is not so compelling as to justify a conclusion that the evidence

was factually insufficient. The contention of error is overruled.

**Cumulative Error**

 Parson next contends the cumulative effect of all errors at trial was such as to violate his due process right to a "reasonably competent and effective" trial under the United States Constitution, Amendment XIV. Although the Texas Court of Criminal Appeals has stated that a number of errors may result in reversible error due to their cumulative effect, *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App.1999), our resolution of the contentions raised above shows that such a situation does not exist in the present case. This contention of error is overruled.

**Conclusion**

We affirm the judgment.