# NO. 12-08-00083-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JACKIE RONALD GREEN,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Jackie Ronald Green appeals his conviction for murder, for which he was sentenced to imprisonment for life. In three issues, Appellant argues that (1) the trial court erred by admitting the transcript of a witness's grand jury testimony and (2) the evidence is legally and factually insufficient to support the trial court's judgment. We affirm.

### BACKGROUND

Appellant was charged by indictment with the murder of Andrew Deese. The indictment further alleged that Appellant had been previously convicted of aggravated assault. Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

Joyce Green testified as the State's first witness. Green testified that she had been married to Appellant for five years. Green further testified that she, Appellant, and Andrew Deese were living together in the same residence on May 18, 2007. Green stated that on May 18, 2007, Appellant struck Deese with a "steel pole broom handle" multiple times from his "head down to his mouth." Green further stated that Appellant pulled Deese's hair, hit his face on the floor, and kicked him with his boots. Green testified that Deese never hit Appellant or otherwise did anything to

deserve such treatment by Appellant. Green further testified that Appellant's beating of Deese continued through the night on Friday to the next day. Green described Deese's appearance as sick with two black eyes. Green stated that when she returned from church on Sunday, Appellant began to kick Deese again. Green further stated that Appellant eventually pushed Deese down to the floor. During cross examination, Appellant impeached Green's testimony with her grand jury testimony concerning certain events. Green admitted that certain portions of her in-court testimony conflicted with her grand jury testimony.[1] On redirect examination, the prosecutor questioned Green concerning numerous statements she made in her grand jury testimony that were consistent with her testimony at trial. Green confirmed during redirect examination that, during the time in question, she saw Appellant punch and kick Deese as well as strike him with a metal pole. Upon further redirect examination, Green testified that she saw Appellant hitting Deese and that such actions caused Deese's death.[2]

Helen Ferguson testified next on the State's behalf. Ferguson testified that she lived across the street from Appellant. Ferguson stated that on Saturday, May 18, 2007, she saw Appellant and another man walk toward Appellant's house. Ferguson further stated that Appellant appeared to be yelling at the man and as the man approached the door to the house, Appellant shoved him very hard. According to Ferguson, the man reeled, but did not fall, and he and Appellant then entered the house. During cross examination, Ferguson testified that the man she saw that day had been staying at Appellant's residence most of the time. On redirect examination, Ferguson described the man with Appellant that day as a large white male, standing over six feet tall, and weighing in excess of two hundred pounds.

Smith County Sheriff's Department Detective Tina Glover testified as the State's next witness. Glover testified that she responded to a call at Appellant's residence regarding a deceased person on May 20, 2007. From her observations at the scene, Glover decided that Deese had died

---

[1] Specifically, Green admitted to conflicting testimony concerning (1) whether Appellant went to sleep on Saturday night, (2) whether Appellant wanted Deese to leave the residence, (3) when Appellant began hitting Deese, (4) when Appellant threw Deese down to the floor, and (5) whether the group had neighbors living nearby.

[2] As Green's testimony neared its conclusion, the trial court admitted into evidence the written transcript of her grand jury testimony over Appellant's objection.

from unnatural causes, called other officers to the scene, and proceeded to secure the area pending an investigation of Deese's death. Glover described Appellant's behavior at that time as "nervous" and "agitated." Glover further stated that Appellant was "controlling" of Green and became agitated whenever Glover tried to speak to Green without his being present.

Smith County Sheriff's Department Detective Noel Martin testified next on the State's behalf. Martin testified that he went to Appellant's residence following Deese's death to investigate the scene. Martin further testified that based upon his assessment of the scene, he determined that it should be treated as the scene of a homicide and that he ultimately found no proof to contradict that determination. Martin testified extensively concerning blood stain, blood trail, and blood spatter evidence found at the scene. Martin also identified a metal pipe that he located in the living room,[3] which, according to Martin, was a deadly weapon capable of causing death or serious bodily injury. Concerning Deese, Martin testified that upon viewing his body at the scene, it was obvious to him that Deese had suffered injuries that were consistent with blunt force trauma and that the metal pipe may have been used as a weapon. Martin also identified a photograph of Appellant's hands taken on the date of his investigation, which he stated showed Appellant's injured, swollen, and red hands, and described the injuries as offensive type wounds. At the conclusion of his direct examination testimony, Martin conclusively stated that Appellant caused Deese's death by inflicting blunt force trauma upon him. On redirect examination, Martin testified that he believed a person who would hit another person with a metal pipe, a hard object, a hand, or a foot was engaged in acts that are clearly dangerous to human life. Furthermore, Martin testified that based on the entirety of his investigation of the case, it was his opinion that the acts committed against Deese were intentional.

Dr. Reade Quinton, a forensic pathologist, testified as the State's next witness. Quinton testified concerning the autopsy he performed on Deese. Quinton further testified that he noted numerous bruises, cuts, and tears on Deese's facial tissue consistent with blunt force trauma to that area of the body. Quinton described Deese's injuries as consistent with someone's being struck with a fist, a foot, a metal pipe, or any other blunt or hard object. Quinton further testified that, during his examination, he observed that Deese had sustained multiple rib fractures on both sides of his

---

[3] The metal pipe was admitted into evidence without objection. Yet, concurrent with its admission, the record reflects that Appellant remarked, "Can I see that? I didn't use that."

3

body,[4] which resulted from the application of significant force. From his examination, Quinton concluded that the cause of Deese's death was multiple blunt force injuries combined with Deese's hypertensive cardiovascular disease. On cross examination, Quinton testified that Deese died due to the combination of blunt force trauma with his then existing state of poor health. Quinton conceded that a normally healthy person might have survived similar infliction of blunt force trauma. On redirect examination, Quinton confirmed that had someone not beaten Deese over every part of his body and broken over half of his ribs, Deese would likely not have died on May 22, 2007 as he did. Quinton also stated that the beating that Deese suffered constituted an act clearly dangerous to his life.

Department of Public Safety Crime Lab Forensic Scientist Melissa Haas testified next on the State's behalf. Haas testified that she conducts DNA analysis and biological evidence testing in forensic case work. Haas further testified that she compared the DNA profiles of blood specimens from the tip of the metal pipe and other blood samples taken from the scene with the blood specimen taken from Deese. Haas stated that from her comparisons between these specimens and the specimens taken from the victim, she determined that the DNA profiles obtained from these specimens were consistent with the DNA profile of Deese.[5] Haas further stated that when comparing a full DNA profile from a known reference sample with an evidentiary sample that has a full DNA profile, it can be said to a reasonable degree of scientific certainty that the known sample is the source of the comparative sample. Subsequently, both parties rested.[6]

Ultimately, the jury found Appellant "guilty" as charged. Following a trial on punishment, the jury found the enhancement allegations in the indictment to be "true" and assessed Appellant's punishment at imprisonment for life and a ten thousand dollar fine. The trial court sentenced Appellant accordingly, and this appeal followed.

---

[4] Quinton specifically testified that Deese had seven rib fractures on the right side of his body and eight rib fractures on the left side of his body.

[5] With regard to one specimen, Haas noted that she did not obtain a DNA profile because there was not sufficient DNA present to obtain any results.

[6] Two witnesses testified for the State after Haas. We do not recount their testimony here because it is not germane to our analysis of the issues Appellant has raised on appeal.

4

### ADMISSION OF TRANSCRIPT OF GRAND JURY TESTIMONY

In his first issue, Appellant argues that the trial court erroneously admitted into evidence the transcript of Green's grand jury testimony. Specifically, Appellant contends that the admission of such extrinsic testimony for impeachment purposes after Green unequivocally admitted she made the prior inconsistent statements at issue violated Texas Rule of Evidence 613. In his second issue, Appellant argues that the trial court's admission of the transcript of Green's grand jury testimony caused harm.

We review a trial court's ruling to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement, or in other words, the decision was arbitrary, unreasonable, and made without reference to any guiding rules or principles. *Id.* We review the trial court's ruling in light of what was before it at the time the ruling was made and uphold the ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.–Dallas 2005, no pet.).

Texas Rule of Evidence 613 provides that a prior inconsistent statement of a witness is admissible for impeachment of the witness. *See* TEX. R. EVID. 613. However, the rule also explicitly states that the extrinsic evidence of the statement itself is admissible only if the witness refuses to admit making the statement. *See Paron v. State*, 193 S.W.3d 116, 120 (Tex. App.–Texarkana 2005, pet. ref'd). This is not merely a refusal to admit making a statement, but refusing to admit making the contents of the statement. *Id.* The courts reason that, when a defendant admits making the statement, it is unnecessary to admit the document itself because the witness impeaches himself or herself. *Id.* Since, as Appellant argues in his brief, Green admitted that her grand jury testimony was inconsistent with her trial testimony in each instance raised by Appellant, it follows that the transcript of Green's grand jury testimony would ordinarily be inadmissible pursuant to rule 613.

However, Appellant neglects to address the State's argument made to the trial court that the transcript of Green's grand jury testimony should be admitted under the rule of optional completeness. Commonly referred to as the "Rule of Optional Completeness," Texas Rule of

5

Evidence 107 addresses admissibility and permits the introduction of otherwise inadmissible evidence. *See **Walters v. State***, 247 S.W.3d 204, 217–18 (Tex Crim. App. 2007). Rule 107 provides, in pertinent part, as follows:

> When part of an act, declaration, conversation, writing[,] or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing[,] or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given.

TEX. R. EVID. 107. Rule 107 is designed to guard against the possibility of confusion, distortion, or false impression that could be created when only a portion of evidence is introduced. *See **Grunsfeld v. State***, 813 S.W.2d 158, 163 (Tex. App–Dallas 1991), *aff'd*, 843 S.W.2d 521 (Tex. Crim. App. 1992). There are two threshold requirements for the application of rule 107. *See **Washington v. State***, 856 S.W.2d 184, 186 (Tex. Crim. App. 1993). First, some portion of the matter sought to be "completed" must have actually been introduced into evidence. ***Id.***; ***Mendiola v. State***, 61 S.W.3d 541, 545 (Tex. App.–San Antonio 2001, no pet.); *see also **Livingston v. State***, 739 S.W.2d 311, 331 (Tex. Crim. App. 1987) (reading from document during cross examination constitutes "use of a portion" of the document pursuant to rule 107). Second, the party seeking to complete the matter must show that the remainder being offered under rule 107 is on the same subject and is necessary to fully understand or explain the matter. ***Mendiola***, 61 S.W.3d at 545.

In the case at hand, Appellant's attorney read from Green's grand jury testimony when seeking to impeach her on cross examination.[7] The prosecuting attorney, in turn, also read from Green's grand jury testimony and questioned her about it with regard to her prior consistent statements in her prior testimony. The portion of Green's grand jury testimony transcript that was admitted into evidence involved the same subject matter that was in evidence by Green's in-court testimony, i.e., Green's account of the event occurring at the scene in the days preceding Deese's death. Appellant's extensive cross examination of Green concerning her prior statements, even considering the State's attempt to balance such testimony with Green's prior consistent statements,

---

[7] Appellant's attorney read the grand jury testimony to Green because Green testified that she could not read.

is best understood in light of the totality of her testimony on the events leading to Deese's death. Nonetheless, the State's examination of Green concerning her prior consistent statements arguably painted a broader picture of her prior testimony for the jury. However, Green's illiteracy necessitated that both attorneys read her prior testimony aloud to her. This unusual circumstance that necessitated that the attorneys read her grand jury testimony aloud to her could have caused confusion for the jury concerning the substance of that prior testimony.[8] Therefore, we conclude that the trial court's admission of the transcript of Green's grand jury testimony was necessary for the jury to gain a full understanding of her testimony, both at trial and before the grand jury. Thus, we hold that the trial court did not abuse its discretion in admitting the transcript under the rule of optional completeness. Appellant's first issue is overruled.[9]

## EVIDENTIARY SUFFICIENCY

In his third issue, Appellant contends that the evidence was neither legally nor factually sufficient to support the trial court's judgment of conviction. Specifically, Appellant argues that there is no evidence that Appellant intentionally or through an act clearly dangerous to human life caused Deese's death.

**Legal Sufficiency**

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to

---

[8] Indeed, Appellant's counsel questioned Green about whether she was confused by the questions concerning her grand jury testimony with regard to its variance from her in-court testimony. From our review of the record, both the extent of the examination conducted by the parties and the manner of the examination, which was necessitated by Green's illiteracy, makes any confusion on Green's part understandable.

[9] Having overruled Appellant's first issue, we do not reach Appellant's second issue, which is essentially a subissue of Appellant's first issue. *See* TEX. R. APP. P. 38.1(e) (The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.).

7

the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." ***Id.*** The use of the hypothetically correct jury charge applies to review for both legal and factual sufficiency. *See **Wooley v. State***, No. PD-0861-07, 2008 WL 2512843, at *1 (Tex. Crim. App. Jun. 25, 2008).

To support a conviction for murder, the evidence must support that the accused (1) intentionally or knowingly caused the death of an individual or (2) intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (Vernon 2003).

In the instant case, Green stated that on May, 18, 2007, Appellant struck Deese with a "steel pole broom handle" multiple times from his "head down to his mouth." Green further stated that Appellant pulled Deese's hair, hit his face on the floor, and kicked him with his boots. Green testified that Deese never hit Appellant or otherwise did anything to deserve such treatment by Appellant. Green further testified that Appellant's beating of Deese continued through the night on Friday to the next day. Green stated that when she returned from church on Sunday, Appellant began to kick Deese again. Green further stated that Appellant eventually pushed Deese down to the floor. Green later confirmed during the redirect examination that, during the time in question, she saw Appellant punch and kick Deese as well as strike him with a metal pole. Upon further redirect examination, Green testified that she saw Appellant hitting Deese and that such actions caused Deese's death.

Ferguson, who lived across the street from Appellant, testified that on Saturday, May 18, 2007, she saw Appellant and another man walk toward Appellant's house. Ferguson further testified that Appellant appeared to be yelling at the man and as the man approached the door to the house, Appellant shoved him very hard. Glover, based on her observations of the scene, decided that Deese

had died from unnatural causes and called other officers to the scene. Glover stated that while she was securing the scene, she noticed Appellant talking to Green and described Appellant's behavior at that time as "nervous" and "agitated." Glover further stated that Appellant was "controlling" of Green and became agitated whenever Glover tried to speak to Green without his being present.

Martin testified extensively concerning blood stain and blood spatter evidence at the scene. Martin identified a metal pipe that he located in the living room and testified that the pipe was a deadly weapon capable of causing death or serious bodily injury. Concerning Deese, Martin testified that upon viewing his body at the scene, it was obvious to him that Deese had suffered injuries that were consistent with blunt force trauma and that the metal pipe may have been used as a weapon. Martin further testified that based on the size, shape, and distribution of the bloodstains located in the living room, it was his opinion that some type of assault occurred all about that area. Martin stated that Deese's clothes were wet, which, when considered with evidence of the presence of blood in and around the bathroom sink, caused him to conclude that someone had attempted to clean up or remove blood from the scene. Martin further stated that it appeared as if someone had attempted to wipe blood stains from Deese's skin. Martin testified concerning blood spatter patterns located on the wall. According to Martin, one of these patterns indicated multiple spatter producing events consistent with medium velocity blunt force type injuries. Martin also identified a photograph of Appellant's hands taken on the date of his investigation. Martin stated that the photograph showed that Appellant's hands were injured, swollen, and red, which Martin described as offensive type wounds. At the conclusion of his direct examination testimony, Martin conclusively stated that Appellant caused Deese's death by inflicting blunt force trauma upon him. On redirect, Martin testified that he believed that a person who would hit another person with a metal pipe, a hard object, a hand, or a foot was engaged in acts that are clearly dangerous to human life. Furthermore, Martin testified that based on the entirety of his investigation of the case, it was his opinion that the acts committed against Deese were intentional.

Quinton testified concerning the autopsy he performed on Deese. Quinton noted numerous bruises, cuts, and tears on Deese's facial tissue consistent with blunt force trauma to that area of the body. Quinton stated that the injuries Deese sustained to his face could be caused by multiple strikes from a blunt instrument such as a fist or other type of blunt object. Quinton further stated that the

steel pipe found at the scene was capable of causing the types of injuries that Deese had sustained. Quinton described Deese's injuries as consistent with someone's being struck with a fist, a foot, a metal pipe, or any other blunt or hard object. Quinton testified that based on his training and experience, injuries such as those Deese received are not the result of an accident. From his examination, Quinton concluded that the cause of Deese's death was multiple blunt force injuries combined with Deese's hypertensive cardiovascular disease. On cross examination, Quinton testified that Deese died due to the combination of blunt force trauma with his then existing state of poor health. Quinton conceded that a normally healthy person might have survived similar infliction of blunt force trauma. On redirect examination, Quinton confirmed that had someone not beaten Deese over every part of his body and broken over half of his ribs, Deese would likely not have died on May 22, 2007 as he did. Quinton also stated that the beating that Deese suffered constituted an act clearly dangerous to his life.

Finally, Haas testified that she compared the DNA profiles of blood specimens from the tip of the metal pipe and other blood samples taken from the scene with the blood specimen taken from Deese. Haas stated that from her comparisons between these specimens and the specimens taken from the victim, she determined that the DNA profiles obtained from these specimens were consistent with the DNA profile of Deese.

Examining the aforementioned evidence in the light most favorable to the verdict, we conclude that the jury could have determined beyond a reasonable doubt that Appellant either (1) intentionally caused Deese's death or (2) intended to cause serious bodily injury to Deese and committed an act clearly dangerous to human life that caused Deese's death. Therefore, we hold that the evidence was legally sufficient to support the trial court's judgment of conviction.

**Factual Sufficiency**

Turning to Appellant's contention that the evidence is not factually sufficient to support the jury's verdict, we must first assume that the evidence is legally sufficient under the *Jackson* standard. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We then consider all of the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although we are authorized to disagree with the jury's

10

determination, even if probative evidence exists that supports the verdict, *see **Clewis***, 922 S.W.2d at 133, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. ***Santellan***, 939 S.W.2d at 164. Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *See **Van Zandt v. State***, 932 S.W.2d 88, 96 (Tex. App.– El Paso 1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. ***Johnson v. State***, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also **Watson v. State,*** 204 S.W.3d 404, 417 (Tex. Crim. App. 2006) (Evidence is factually insufficient only when the reviewing court objectively concludes that the great weight and preponderance of the evidence contradicts the verdict.).

In support of his factual sufficiency contention, Appellant argues that Green's testimony is so inconsistent that its veracity should be called into question. We acknowledge inconsistencies in Green's testimony, most notably, her testimony concerning the time period over which Appellant pummeled Deese. Yet, we iterate that our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony, *see **Santellan***, 939 S.W.2d at 164, and where there is conflicting evidence, the trial court's verdict on such matters is generally regarded as conclusive. *See **Van Zandt,*** 932 S.W.2d at 96. Further, Green's testimony that Appellant struck Deese by various means was steadfast. Moreover, Martin's and Quinton's respective testimony is largely consistent with Green's account.

We have reviewed the record in its entirety. Our review of the record as a whole, with consideration given to all of the evidence, both for and against the jury's finding, has not revealed to us any evidence that causes us to conclude that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to support the trial court's judgment. Appellant's third issue is overruled.

11

## DISPOSITION

Having overruled Appellant's first and third issues,[10] we ***affirm*** the trial court's judgment.


  BRIAN HOYLE  
Justice


Opinion delivered January 30, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)

---

[10] We did not consider Appellant's second issue. *See* n.9.

12