

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00548-CR

Nicolas C. **FLORES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 355026
Honorable Liza Rodriguez, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Karen Angelini, Justice
            Sandee Bryan Marion, Justice
            Patricia O. Alvarez, Justice

Delivered and Filed:  December 23, 2014

AFFIRMED

After the trial court denied the motion to suppress filed by appellant Nicolas C. Flores, a jury found him guilty of the offense of driving while intoxicated.  On appeal, Flores contends the trial court erred by (1) denying his motion to suppress and (2) refusing to admit transcripts of the arresting officer's testimony from both the administrative license revocation hearing and the motion to suppress hearing.  Flores also contends that if this court reverses the trial court's ruling on the motion to suppress, we should render a judgment of acquittal because the evidence would then be legally insufficient to support his conviction.  We affirm the trial court's judgment.

## BACKGROUND

On February 20, 2011, at approximately 3:00 a.m., Detective Michael Fletcher was on routine patrol when he saw a vehicle parked in a McDonald's parking lot, at an angle across several parking spots. As the officer approached, he saw Flores slumped over the steering wheel. Detective Fletcher described Flores as responding slowly to the spotlight Detective Fletcher used to illuminate the interior of the vehicle. When Detective Flores approached the vehicle to verify that Flores was not injured or in need of help, Flores rolled down the back window, and Detective Flores detected the smell of intoxicants. When asked to exit the vehicle and provide his driver's license and proof of insurance, Flores refused. Flores was ultimately arrested, and a warrant was obtained to draw a specimen of Flores's blood. The toxicology report showed that Flores's blood alcohol content was 0.18, more than double the legal limit.

The trial court denied Flores's motion to suppress; and, after multiple witnesses and several days of testimony, the jury found Flores guilty of driving while intoxicated-second. The jury assessed one year confinement in the county jail, suspended and probated for a term of eighteen months, and a fine in the amount of $400.00. Flores appeals.

## MOTION TO SUPPRESS

In his first issue, Flores contends the trial court erred in denying his motion to suppress and specifically challenges the trial court's conclusion that Flores's seizure was objectively reasonable under the community caretaking function.

### A.    Standard of Review

We apply an abuse of discretion standard to a trial court's ruling on a motion to suppress. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In determining whether the trial court abused its discretion, we review the trial court's ruling under a bifurcated standard. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We first give almost total deference to the

trial court's determination of historical facts, especially when those findings turn on the witnesses' credibility and demeanor. *Id*. The trial judge is "entitled to believe or disbelieve all or part of the witness's testimony—even if that testimony is uncontroverted—because he has the opportunity to observe the witness's demeanor and appearance." *Id.* "If the trial judge makes express findings of fact, we view the evidence in the light most favorable to his ruling and determine whether the evidence supports [the] factual findings." *Id*. Second, we review the trial court's application of the law to the facts de novo. *Id*. "We will sustain the trial court's ruling if that ruling is reasonably supported by the record and is correct on any theory of law applicable to the case." *Id*. at 447–48 (internal citations omitted).

## B.      Community Caretaking Function

Without reasonable suspicion or probable cause that an offense has been committed, a police officer may, in accordance with his community caretaking function, "stop and assist an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help." *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). The community caretaking function is "'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *Corbin v. State*, 85 S.W.3d 272, 276–77 (Tex. Crim. App. 2002) (quoting *Cady*, 413 U.S. at 441). The exception concerns police functions such as assisting individuals who cannot care for themselves or who are in danger of physical harm, resolving conflicts, and reducing the opportunities for the commission of crime. *Laney v. State*, 117 S.W.3d 854, 860 (Tex. Crim. App. 2003).

To properly invoke the community caretaking exception, a police officer must (1) be primarily motivated by his community caretaking function, and (2) reasonably believe that the individual is in need of help. *Gonzales v. State*, 369 S.W.3d 851, 854–55 (Tex. Crim. App. 2012).

In determining whether a police officer reasonably believed an individual was in need of help, the following factors are considered: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others. *Wright*, 7 S.W.3d at 151–52.

### C.    Testimony before the Trial Court

The only witness called to testify at the motion to suppress hearing was Detective Fletcher. At approximately 3:00 a.m., on February 20, 2011, Detective Fletcher was on patrol when he noticed a car parked in a McDonald's parking lot. On cross-examination, Detective Fletcher agreed the parking lot was a public parking lot, was well-lit, the drive-through lane of the McDonald's restaurant was open for business, and the parking lot was not an isolated area but was near a busy intersection. Detective Fletcher explained Flores's parked vehicle was unusual because at 3:00 a.m., only the McDonald's drive-through is operational.

As Detective Fletcher approached the vehicle, he saw the headlights were on, it was parked across several parking lanes, and he could see the "driver was slumped forward with his head down." When Detective Fletcher initially parked his vehicle, he had a clear sight of both the driver's window and driver's back door; he reiterated that his patrol car was not blocking the parked vehicle. Detective Fletcher was adamant that he approached the driver "[t]o check on his well-being to make sure that he was okay," not in regard to any criminal offense. Before he exited his vehicle, Detective Fletcher turned on his spotlight to illuminate the interior of Flores's vehicle.

As Detective Fletcher approached the vehicle, Flores rolled down the "back vent window." While attempting to identify Flores, Detective Fletcher testified that he "smelled a light odor of intoxicants coming from the vehicle" and described Flores as "slow, kind of like he had just woke up, as he raised up from, I guess, reacting to the spotlight itself." When Detective Fletcher asked

- 4 -

Flores to exit the vehicle and to provide his driver's license and proof of insurance, Flores refused to exit the vehicle, was generally uncooperative, and then "started his car back up." Based on Flores's response, Detective Fletcher was instructed by his sergeant to move his patrol vehicle to prevent Flores from leaving the parking lot. During cross-examination, defense counsel asked several questions regarding Detective Fletcher's prior testimony at the administrative license revocation hearing, particularly focusing on the location of Detective Fletcher's patrol vehicle. Detective Fletcher was resolute that Flores's vehicle was not "blocked in" prior to Detective Fletcher discussing the situation with his sergeant. After discussing the situation with his sergeant, Detective Fletcher then moved his patrol vehicle and blocked any egress by Flores.

**D.     Analysis**

As previously noted, in deciding whether the trial court properly concluded that Flores's seizure was objectively reasonable under the community caretaking function, the trial court was required to find that Detective Fletcher was (1) primarily motivated by his community caretaking function, and (2) reasonably believed that Flores was in need of help. *See Gonzales*, 369 S.W.3d at 854–55.

*1.      Primarily Motivated by Community Caretaking Function*

Detective Fletcher was unwavering in his testimony that he approached Flores "[t]o check on his well-being to make sure that he was okay." Detective Fletcher testified Flores was slumped over the steering wheel of his vehicle which was parked across multiple parking spaces at a McDonald's whose dining area was closed for business at 3:00 a.m. Based on this evidence, the trial court found that it was Detective Fletcher's "intent to check on the well-being of [Flores] and that's the reason that he initially made contact with him." Because the record supports the trial court's finding, the trial court did not abuse its discretion in concluding that Detective Fletcher was primarily motivated by community caretaking concerns. *See Gonzales*, 369 S.W.3d at 855

("We see no reason to second-guess the trial judge's determination of an issue that is supported by the record and depends so much on credibility and demeanor."); *Corbin*, 85 S.W.3d at 277 ("The trial court, as the exclusive judge of credibility and finder of fact, could have concluded that [the officer] was primarily motivated by community caretaking concerns.").

Having determined that the trial court properly found that Detective Fletcher was primarily motivated by his community caretaking concerns, we next consider whether Detective Fletcher reasonably believed that Flores was in need of help.

### 2. *Reasonable Belief that Flores Was in Need of Help*

In applying this second prong of the test, we do not focus on the specific distress that Flores was exhibiting, but instead we conduct an objective analysis "focusing on what the officer observed and whether the inference that the individual was in need of help was reasonable." *Gonzales*, 369 S.W.3d at 856. Although the parking lot in which Flores was parked was not in an isolated location, it was 3:00 a.m., and Flores's vehicle was parked across several parking spaces in a parking lot of a business that was only open for drive-through service. *Gonzalez*, 369 S.W.3d at 856; *Wright*, 7 S.W.3d at 152.

Detective Fletcher testified that Flores was alone in the vehicle and that he was slumped over the steering wheel. Although there were employees in the restaurant, only the drive-through was open, and there were no signs that anyone from the restaurant was assisting Flores at the time. The trial court found that "because of the hour of the night and the position in which the defendant was in, the manner in which the car was parked. . . . I don't think it would have been prudent for [Detective Fletcher] not to investigate the situation and check to see what—if the defendant needed assistance in some way." Because the trial court's finding is supported by the record, the trial court did not abuse its discretion in finding that Detective Fletcher reasonably believed Flores was in need of help.

*3.      Conclusion*

Because the evidence supports the trial court's findings that Detective Fletcher was primarily motivated by his community caretaking concerns and reasonably believed Flores was in need of help, the trial court did not abuse its discretion in denying Flores's motion to suppress. Flores's first issue is overruled.

**EXCLUSION OF EVIDENCE**

During the cross-examination of Detective Fletcher at trial, defense counsel attempted to admit transcripts of Detective Fletcher's testimony from the administrative hearing on Flores's license revocation and the hearing on Flores's motion to suppress. The trial court sustained the State's objection. In his second issue, Flores contends the trial court abused its discretion in excluding the transcripts.

**A.      Standard of Review**

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit or exclude evidence, we will not reverse the ruling unless it falls outside the "zone of reasonable disagreement." *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007).

**B.      Arguments of the Parties**

Flores contends that the transcripts of Detective Fletcher's testimony from the administrative hearing and the motion to suppress were prior inconsistent statements that were admissible not just for impeachment, but for the truth of the matter asserted. The State counters that because Detective Fletcher admitted to making all of the previous statements, and explained

them to the jury, the transcripts were inadmissible under Rule 613(a) of the Texas Rules of Evidence.

## C.    Prior Inconsistent Statements

A prior inconsistent statement is a statement "inconsistent with the declarant's testimony, and . . . given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding." TEX. R. EVID. 801(e)(1)(A).  A prior inconsistent statement of a witness may not be admitted until the witness is told the contents of the prior statement as well as the time and the place and the person to whom it was made, and is given an opportunity to explain or deny the statement.  TEX. R. EVID. 613(a).  "If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted."  *Id.*

## D.    Analysis

During cross-examination, defense counsel extensively questioned Detective Fletcher regarding his prior testimony.  In response to these questions, Detective Fletcher unequivocally admitted making each of the statements in his prior testimony, but he disagreed with defense counsel as to what the officer meant by his statements.  Because Detective Fletcher admitted each of the statements in question, extrinsic evidence of the statements was inadmissible.  *Id.*; *Parson v. State*, 193 S.W.3d 116, 120–22 (Tex. App.—Texarkana 2006, pet. ref'd) (holding trial court abused its discretion in admitting extrinsic evidence of witness's prior testimony where witness admitted making prior statements).  Therefore, the trial court did not act arbitrarily or without reference to any guiding rules or principles in refusing to admit the transcripts.  Accordingly, we overrule Flores's second issue.

**SUFFICIENCY**

Although Flores labels his final issue as "sufficiency of the evidence," his only argument is that "there is no evidence to support the conviction other than that which is the subject of the

Motion to Suppress, therefore if this Honorable Court determines that it was an abuse of discretion for the trial Court to deny the Motion to Suppress, then this case should be reversed and a verdict of 'Not Guilty' rendered." Because we have held that the trial court did not abuse its discretion in denying Flores's motion to suppress, Flores's third issue is overruled.

### CONCLUSION

The trial court's judgment is affirmed.

Patricia O. Alvarez, Justice

DO NOT PUBLISH